Racer *v.* The State, for Use of Rhine, Drainage Commissioner.

Filed April 29, 1892.

---

## No. 16,403.

## RACER *v.* THE STATE, FOR USE OF RHINE, DRAINAGE COMMISSIONER.

DRAINAGE.—*Pleading.*—*Action to Foreclose Lien.*—In an action to enforce the collection of an assessment levied to pay the cost of constructing a public ditch, an answer is bad which proceeds either upon the theory that the commissioner of drainage had no authority to enforce the assessment because the work was not completed, or because the work had not been done, and would not be done, according to contract.

SAME.—*Drainage Commissioner.*—*Levying of Assessments.*—The commissioner of drainage under our statutes is authorized to exercise a reasonable discretion in levying assessments to secure in advance money to pay for work in progress, but not completed.

SAME.—The fact that the contract between the drainage commissioner and the party employed to do the work provided that "No part of said work shall be accepted from said Henry C. Paul as completed until all of said ditch down stream therefrom shall have been completed according to said specifications" did not prevent the commissioner from levying an assessment before the work was so completed.

SAME.—*Assessment to Meet Claim when it Matures.*—While the powers of a

drainage commissioner are strictly statutory, he has nevertheless a reasonable and limited discretion. In providing in advance the means of paying the contractor when his claim should mature, the commissioner was acting within the scope of his authority, and did not abuse the discretion conferred upon him by statute.

SAME.—*For what Purposes Assessments May be Made.—Presumption as to.*—An assessment may be made and enforced to pay other expenses than those directly incurred in constructing the ditch. As the commissioner can have no other funds except such as are derived from assessments, it follows that when it becomes necessary and proper under the law to secure funds, he may make an assessment. When the contrary does not appear the courts must assume that there was a valid reason and proper cause for making an assessment. See Elliott's Supp., section 1178.

SAME.—*Neglect of Duty by Commissioner.—Remedy of Land-Owner.*—It was the duty of the drainage commissioner to compel the performance of the work in substantial compliance with the contract, but his failure to do so would not constitute a defence to a suit to enforce an assessment. The remedy of the land-owner is to make application to the court having control of the work, and whose agent the commissioner is, to compel a performance of duty by the contractor and the commissioner.

PUBLIC OFFICER.—*Construction of Public Work.—Performance of Duty.—Presumption.*—A public officer, whose duty it is to construct or supervise a public work, is presumed to rightfully discharge his duty, and what he does within the scope of his authority is regarded as *prima facie* right, and in accordance with the law.

PLEADING.—*Answer Can Not Perform a Double Office.*—A single paragraph of answer can not perform a double office. It can not be good as a denial and also as a plea in confession and avoidance.

SAME.—*Plea in Confession and Avoidance.*—An answer can not be good as a plea in confession and avoidance unless it overcomes by affirmative allegations the *prima facie* case which it confesses and seeks to avoid. The affirmative allegations are the controlling ones, and those which are equivalent to the denials embraced in the answer of general denial are without influence.

SAME.—*Must be Judged from General Scope.—Matters of Judicial Knowledge.—Averments Contradicting.*—A pleading is to be judged from its general scope and tenor, and not from fragmentary statements or general conclusions cast into it. The general statements must yield to the specific allegations. Averments contradicting matters of which judicial knowledge is taken are generally unavailing.

SAME.—*Must Proceed Upon Definite Theory.*—A pleading must proceed upon some definite theory, and must be good upon the theory on which it professes to proceed.

PRACTICE.—*Demurrer.— When Sustaining of Unavailable Error.*—There is no available error in sustaining a demurrer to a paragraph of an answer

where the same evidence is admissible under other paragraphs of the answer which are allowed to stand.

From the Blackford Circuit Court.

*J. N. Templer, R. S. Gregory* and *A. C. Silverburg,* for appellant.

*W. H. Carroll; G. Dean, B. G. Shinn* and *E. Pierce,* for appellee.

ELLIOTT, C. J.—The appellant prosecutes this appeal from a decree rendered in a suit brought on the relation of Charles A. Rhine, commissioner of drainage, to enforce the collection of an assessment levied to pay the cost of constructing a public ditch. The proceedings for the construction of the ditch were had in the Blackford Circuit Court, and were conducted under the drainage law of 1881, and the amendatory statute of 1883; section 4273, R. S. 1881, *et seq.;* Elliott's Supp., sections 1175 to 1183. The ditch was ordered to be constructed by the circuit court, the order was so far carried into effect by the execution of contracts, bonds and the like, as well as by the performance of work by the contractor, that six miles of the ditch had been constructed at the time this suit was brought, leaving five miles of the entire line of the ditch to be constructed. The appellant, against whose land an assessment was levied, answered, setting forth the contract for the construction of the ditch, which contract reads as follows:

"Smith Casterline, commissioner of drainage of Blackford county, Indiana, charged with the construction of the 'Big Lick Creek Ditch,' of the one part, and Henry C. Paul, of the other part, contract as follows: Said Henry C. Paul agrees to construct all that part of the Big Lick Creek Ditch which extends from station 0 to 668 thereof in said county, in all respects according to the specifications and requirements thereof in the report of the commissioners of drainage, confirmed by the judgment of the circuit court of said county establishing said ditch. No part of said work shall be ac-

cepted from said Henry C. Paul as completed until all of said ditch down stream therefrom shall have been completed according to said specifications; and said Henry C. Paul agrees to complete the work herein contracted for by the 12th day of March, 1891, or within ten days after all that part of said ditch which is down stream therefrom shall have been so completed as aforesaid, and accepted by said drainage commissioner and by the court establishing said ditch, and in consideration of all which said Henry C. Paul is to receive of said Casterline, commissioner of drainage, the sum of $15,498 out of the money arising from the assessments made by the drainage commissioners and confirmed by said court for the construction of said ditch. And it is agreed that Casterline shall not, in any event, be liable, either personally or as such commissioner, to pay any money to said H. C. Paul on account of this contract or the construction of the work herein contracted for except such money as he may obtain from said assessments; but that he shall use due diligence to so collect and apply said assessments as to pay said Henry C. Paul all money that shall become due him hereunder."

This contract is made with special reference to the act of the Legislature of this State, entitled "An act concerning drainage," approved April 8th, 1881, and the amendments thereof in chapter 126 of the Acts of 1883, approved March 8th, 1883.

The answer, after setting forth the contract, alleges " That by the terms of said contract with the said Paul for the construction of said ditch, no part of the cost and contract-price for the construction thereof is to be paid until said ditch shall have been constructed according to the plans and specifications, order and judgment of the court in the establishment thereof, and to the satisfaction and acceptance of said court; that said commissioner, long before the commencement of this suit, collected of the benefits so assessed, to wit: In May, 1889, more than $1,000, with which money he, as

Racer *v.* The State, for Use of Rhine, Drainage Commissioner.

such commissioner, then and there, and long before the com-
mencement of this suit, paid and settled all costs and ex-
penses incident to the establishing of said ditch, as well as
those incurred in preparation of reports and expenses which
the petitioners incurred in the preparation and presentation
of their said petition for the establishment of their said ditch,
and all other expenses ordered and directed to be paid by the
court by said commissioner, and all expenses of every kind
and description connected with the location and establish-
ment of said ditch and prosecution of said work, except the
cost of construction agreed upon as set forth in said contract
with the said Paul, which amount is not to be paid until said
ditch shall have been constructed as therein provided for and
in strict conformity with the plans and specifications for the
construction of said ditch, as the same were reported by said
commissioners, and ordered and adjudged by said court in
the establishment thereof; that said commissioner now has
in his hands, as such commissioner, so collected by him, a
large sum of money, to wit, more than $100, after paying and
adjusting all costs and expenses incident to the establishment
of said ditch and the prosecution of said work as aforesaid,
which amount of money is more than will be needed by said
commissioner, or necessary in the further prosecution of said
work, until the cost of construction as provided for in the
said contract with the said Henry C. Paul shall become due
and payable; that by the terms of said agreement the said
contractor, Paul, is to have said ditch completed by March,
1891.

"The defendant avers that after the making of said con-
tract for the construction of said ditch with the said Paul,
the said Paul, with the full knowledge of said commission-
er, commenced the construction of said ditch, and proceeded
to construct the same by the use of a dredging machine, and
has proceeded and constructed in manner and form as here-
inafter stated some five miles of the same, and is proceeding
by the use of said machine, and with the knowledge and per-

mission of said ditch commissioner, to the construction of all the remaining portions of said ditch ; that the route and lines of said ditch lie in and through a section of the country composed principally of loam, loose earth and quicksands ; that the said contractor and the said commissioner began the construction of said ditch with said machine at the source thereof and proceeded toward the outlet, and did not, as they should have done, begin at the outlet and proceed to the source ; that said machine is so constructed as that the same is managed and operated by steam power generated by the use of engine and boiler, floated in a boat to which levers and scoops are attached for removing the earth ; said boat is a frame work so constructed as that in order to operate it it is made necessary to be sunk perpendicularly into both sides and banks of said ditch from two to five feet, and in such condition pinioned by the use of pillars and posts to hold it steady and in place while the work is being done ; that in the use of said machine as aforesaid great quantities of water are retained in that part of the ditch where the excavations are made, by reason whereof the banks and grounds are kept thoroughly saturated, and in operating said machine the banks and ground are jarred and broken so that they crumble in ; that in that portion of the ditch now dug, being some five miles or more as aforesaid, the same has been done without any regard to the plans and specifications provided therefor, and in total violation of the order and judgment of the court in establishing the same; that the said ditch has been cut and constructed from three to ten feet wider at the top, through the whole course thereof, than said plans and specifications, order and judgment of the court provide for ; that the banks thereof are cut perpendicularly to a depth of from three to seven feet, without giving or providing for any slope thereto whatever, and the residue of said banks to the full depth of said ditch has been scooped and is being scooped by the use of said machine so as that the same, to wit : said banks are concave and

irregular, and the bottom of said ditch, through the whole course thereof, has been constructed, and is being constructed, from two to ten feet wider than is provided for by said plans and specifications and order and judgment of the court establishing the same; that the whole of said ditch now constructed by said contractor, Paul, and the said commissioner, has been constructed by the use of said machine in manner and form as above stated. The defendant avers that said ditch so constructed has been entirely obliterated, and has destroyed the lines, courses, metes and bounds, plans and specifications adopted by said court, and ordered and adjudged as the lines, courses, metes and bounds, plans and specifications for the construction of said ditch, so that the same can not now be, nor can it hereafter be, made to conform with the plans and specifications adopted for the construction of said ditch; that the said contractor and the said relator, commissioner, have, in the construction of said work, destroyed said ditch, and made it absolutely impossible ever to be constructed in manner and form as ordered and adjudged by the court; that on account of the great depth to which said ditch has been cut and constructed by the said contractor and the said relator, and the banks thereof having been cut perpendicularly and in a concave manner, and the water having been retained therein for the floating of said machine, the said banks have broken, caved and crumbled so that in many places the said ditch is now forty to fifty feet in width, where the same should have been, by the plans and specifications therefor, twelve to fifteen feet in width; that said ditch, instead of being an improvement and benefit to the land through which it passes, has been made so as that the same is an irreparable damage thereto; that the said relator, commissioner, and the said contractor are proceeding to the completion of said work by the use of said machine in manner and form as above stated; that by the use of said machine it is physically impossible to cut or construct said ditch in whole or in part in conformity with the said plans

and specifications, order and judgment of said court for the same; that the sides are perpendicular and concave, and the bottom is concave and irregular, and in every particular said ditch at top and bottom and sides is from three to ten feet wider than provided for by said plans and specifications, by reason whereof the same can never be made to conform to said plans and specifications; that said work, under and by virtue of said contract, is not to be paid for until the same has been completed according to the plans and specifications as aforesaid, and in conformity with the order and judgment of the court establishing said ditch. The defendant further avers that by the acts and doings of said relator in the construction of said ditch, the said plans and specifications, lines and courses, metes and bounds of said ditch have been destroyed, and the completion of said work made impossible; that the collection of said assessments is not necessary now or at any time; that it is not necessary that the said relator, commissioner, should collect said assessments, or any of them, now or at any time, as the same will not be needed under and by virtue of said contract in the construction of said ditch, because the said ditch has been destroyed and the acceptance of said work and ditch by the court made impossible; that in any event the said assessments, and the money arising therefrom, will not be needed until said ditch has been completed according to the plans and specifications aforesaid; and the defendant avers that said ditch will not be completed according to said plans and specifications, and will not be acceptable to said court, within the next three years, and will not be so completed and accepted at any time."

It is very difficult to determine upon what definite theory the answer proceeds, or to give it a construction that will make its allegations harmonious and consistent. It will conduce to clearness to state at the outset some general rules by which we must be governed, and after this is done con-

Racer v. The State, for Use of Rhine, Drainage Commissioner.

sider the allegations of the answer somewhat in detail, and apply to them the general principles which rule the case.

The second paragraph of the answer must be regarded as in confession and avoidance. If it be regarded as in denial, then, as the general denial was pleaded in the first paragraph, we should be compelled to hold that there was no prejudicial error in sustaining the demurrer even if the answer was good, inasmuch as it is well settled that there is no available error in sustaining a demurrer to a paragraph of an answer in a case where the same evidence is admissible under other paragraphs of the answer which are allowed to stand.

A single paragraph of an answer can not perform a double office, that is, it can not be good as a denial and also as a plea in confession and avoidance. *Cronk* v. *Cole*, 10 Ind. 485; *Kimble* v. *Christie*, 55 Ind. 140 ; *Woollen* v. *Whitacre*, 73 Ind. 198 ; *Richardson* v. *Snider*, 72 Ind. 425 ; *State, ex rel.*, v. *Foulkes*, 94 Ind. 493 (498) ; *Petty* v. *Trustees, etc.*, 95 Ind. 278 ; *Nysewander* v. *Lowman*, 124 Ind. 584 (590). The answer before us, if good at all, must be good as a plea in confession and avoidance, and this it can not be unless it overcomes by affirmative allegations the *prima facie* case which it confesses and seeks to avoid. The affirmative allegations are the controlling ones, and those which are equivalent to the denials embraced in the answer of general denial are without influence.

A pleading is to be judged from its general scope and tenor, and not from fragmentary statements or general conclusions cast into it. *Neidefer* v. *Chastain*, 71 Ind. 363; *Lawrence* v. *Beecher*, 116 Ind. 312. The specific allegations are the influential ones to which general statements yield. *Reynolds* v. *Copeland*, 71 Ind. 422; *Keepfer* v. *Force*, 86 Ind. 81; *Spencer* v. *McGonagle*, 107 Ind. 410; *McPheeters* v. *Wright*, 110 Ind. 519; *City of Logansport* v. *McConnell*, 121 Ind. 416 (417). This established and salutary rule of pleading requires us to regard as of no effect some of the

general statements of the answer, for the reason that they are in conflict with the specific averments. The general statement as to the possibilities of the future yield to the specific statements and these show that it is possible to compel the contractor to construct the ditch as the contract requires.

Averments contradicting matters of which judicial knowledge is taken are generally unavailing. *Jones* v. *United States*, 137 U. S. 202; *Jamieson* v. *Indiana Natural Gas, etc., Co.*, 128 Ind. 555 (574). As to the extent of this rule, or the limitations upon it, we need not inquire, since it is enough for our present purpose to give it a very restricted application. This is so, because it is sufficient to employ it for the purpose of denying influence to the conclusion of the pleader that because stakes and lines are obliterated the ditch can not be completed according to the contract, for it is matter of common knowledge that lines once established and once designated by marks can be re-established. The general conclusion is really no more than the unsupported opinion or belief of the pleader, for the specific facts pleaded do not give it support, and it is evident that it can not be supported.

It is well settled that a pleading must proceed upon some definite theory. It is clear that an intelligent issue could never be formed if there were no such rule, and hence the courts have adhered to the rule with strictness. *Mescall* v. *Tully*, 91 Ind. 96 and cases cited; *Toledo, etc., R. R. Co.* v. *Levy*, 127 Ind. 168 (171), and cases cited. We must, therefore, ascertain, if we can, upon what theory this answer proceeds and determine whether it is good upon the theory on which it professes to proceed.

It is exceedingly difficult to determine upon what theory the answer proceeds. Some of the allegations seem to indicate that it proceeds upon the theory that there is no authority to collect the assessment. Among the allegations we find this : " That said commissioner now has in his hands a large sum of money, to wit, more than one hundred dollars,.

Racer *v.* The State, for Use of Rhine, Drainage Commissioner.

after paying and adjusting all costs and expenses incident to the establishment of said ditch, which amount of money is more than will be needed by said commissioner, or necessary in the further prosecution of said work, until the cost of construction as provided for in the said contract with the said Henry C. Paul shall become due and payable." This allegation, and those connected with it, seem to indicate that the theory is that there is no authority to collect money to pay for the ditch until it is constructed. These allegations concede that money will be due at some time, and are inconsistent with the allegations which go upon the professed theory that the ditch can never be completed. They are also inconsistent with the allegations indicating that the defence relied on is that the work has not been done according to contract, and will not be done as the contract provides. The principal allegations of the answer seem to require the conclusion that the theory of the pleading is that the work has not been done, and will not be done, according to contract. But yielding the pleader the benefit of all doubt, and conceding, but by no means deciding, that it is proper to embody in a single paragraph of answer several distinct and inconsistent theories, we will examine and decide all the material questions that counsel have argued or presented.

If the answer is to be considered as proceeding upon the theory that the commissioner had no authority to enforce the assessment because the work was not completed, it is clearly bad. The discussion of this point necessarily covers a wide range, inasmuch as it leads us to examine generally the provisions of the statute, to consider the duties and authority of the drainage commissioner, and the rights and liabilities of the land-owners.

The statute invests the drainage commissioner with comprehensive powers. Elliott's Supp., section 1178. Among those principal powers is the power to levy and enforce assessments from time to time as the work progresses. Under the elementary rule that the grant of a principal power car-

ries with it subsidiary powers, such subordinate incidental powers were acquired by the commissioner as were necessary to effectuate the principal power granted. There can, therefore, be no doubt that the commissioner has a reasonable and limited discretion as to when assessments shall be levied and enforced.

A public officer, whose duty it is to conduct or supervise a public work, is presumed to rightfully discharge his duty, and what he does within the scope of his authority is regarded as *prima facie* right, and in accordance with the law. *Linville* v. *State, ex rel.,* 130 Ind. 21 ; *McCoy* v. *Able, post,* p. 417. See, also, authorities cited in Elliott Roads and Streets, pp. 430, 438, notes.

In the absence of a showing to the contrary, it must be presumed that the drainage commissioner did his duty in making the assessment he is here seeking to enforce, for the law, as we have seen, authorizes him to make assessments as the work progresses. It, indeed, goes further, for it provides that expenses of the court and the like may be included in the assessment. This is the clear implication of the language employed by the framers of the statute, for it declares that the commissioner " shall pay costs not otherwise adjudged, and expenses incident to establishing the same, and incurred in preparation of reports, and any expense which the petitioner may have incurred in the preparation or presentation of his petition, and such other expenses as the court shall deem a proper charge upon the funds in the hands of such commissioner, and the damages assessed, and the cost of construction." Elliott's Supp., section 1178. The express words of the statute make it quite clear that an assessment may be made and enforced to pay other expenses than those directly incurred in constructing the ditch. As the commissioner can have no other funds except such as are derived from assessments, it must of necessity follow that when it becomes necessary and proper under the law, to secure funds, he may make an assessment. Where the contrary does

not appear, the courts must assume that there was a valid reason and proper cause for making the assessment.

It follows from what we have said that there was authority to levy the assessment, although the ditch was not fully constructed, and it follows, also, that the answer is bad unless it fully meets the complaint and states facts that make it appear that the drainage commissioner either exceeded his authority or was guilty of a breach of duty.

The statute does not so restrict the authority to levy assessments as to inhibit its exercise until the money is required to pay for work that has been done. We think that the statute considered, as it must be, as an entirety, authorizes the commissioner to exercise a reasonable discretion in levying assessments to secure in advance money to pay for work in progress, but not completed. Provision is made for the execution of a bond by the contractor, and various other provisions are found in the statute indicative of an intention to authorize the commissioner to secure money to pay for the work as it is done. The entire proceeding is, it is important to remember in this connection as well as in another of which we shall presently speak, conducted under the control of a court of superior general jurisdiction, so that the land-owners can at any time apply to the court to restrict or direct its agent. The contract does not preclude the commissioner from levying or collecting assessments. Counsel refer us to the provision of the contract which reads thus: " No part of said work shall be accepted from said Henry C. Paul as completed, until all of such ditch down stream therefrom shall have been completed according to said specifications," and, as we understand them, argue that this precludes the levying of an assessment. We regard the position of counsel as plainly untenable. It may be true that the contractor can not be paid until the work specified is completed as the contract requires, but, granting this to be true, it would by no means follow that the commissioner did not have authority to levy an assessment. Counsel quote

the part of the statute defining the power of the commissioner, which reads as follows: "He shall assess from time to time upon the lands benefited, ratably upon the amount of benefits as adjudged by the court, such sums of money as may be necessary therefor, not exceeding the whole benefits so adjudged upon any one tract; and he may require the same to be paid in installments, not exceeding twenty per cent. per month, at such times as he shall fix, after thirty days' notice thereof, to be given by personal notice to the owner of such land, or by one publication in a newspaper published in each of the counties in which the lands benefited are situated, stating when and where such payments shall be made." Section 4277, R. S. 1881. But we are unable to perceive that this provision restricts the authority of the commissioner as counsel contend; on the contrary, it seems clear to us that the provision quoted, even if it were segregated from all others, would authorize an assessment to be ratably collected, although the work had not been done which the commissioners proposed to use the money in paying. The law enters into the contract as a silent factor; and if there were doubt upon the question, the effect of the law would remove it by making the contract refer only to payment to the contractor, but the words of the contract are too clear to admit of doubt or require construction. We can not resist the impression that the learned counsel for the appellant have been led into error upon this point by confusing the authority to pay the contractor prior to the completion of the work with the authority to collect an assessment so as to be prepared to pay the contractor when his right to payment accrues.

We fully agree with appellant's counsel that the powers of the drainage commissioner are statutory. He has only such powers as are granted to him expressly or by clear and necessary implication. *Weaver* v. *Templin,* 113 Ind. 298; *Smith* v. *State, ex rel.,* 117 Ind. 167; *Indianapolis, etc., G. R. Co.* v. *State, ex rel.,* 105 Ind. 37; *Fries* v. *Brier,* 111 Ind. 65. But while his powers are strictly statutory, he has, neverthe-

Racer *v.* The State, for Use of Rhine, Drainage Commissioner.

less, a reasonable and limited discretion. In providing in advance the means of paying the contractor when his claim should mature, the commissioner was unquestionably acting within the scope of his authority, and did not abuse the discretion conferred upon him by the statute.

We regard the answer as bad, although it be construed as sufficiently showing that the work was not done, or being done, as the contract required. In affirming this we do not mean to adjudge that the commissioner has authority to permit a material or injurious departure from the contract. We affirm, on the contrary, that he has no such authority. He may, perhaps, in the exercise of a sound and reasonable discretion, permit departures of an immaterial nature, or which can not result to the injury of the land-owners assessed, but he can not authorize a change in the mode of doing the work to the substantial injury of those upon whom the burden of paying for it is cast by law. But it by no means follows that because the duty of the commissioner is to compel the performance of the work in substantial compliance with the contract, his failure to do. so will constitute a defence to a suit to enforce an assessment. The land-owner is not without remedy, but his remedy is not by way of defence to the assessment. His remedy is to make application to the court having control of the work, and whose agent the commissioner is, to compel a performance of duty by the contractor and the commissioner. This was expressly decided in the case of *Indianapolis, etc., G. R. Co.* v. *State, ex rel., supra.* In that case it was said : " The remedy is, therefore, to apply to the court, and through its order and intervention secure the due execution of the work." The answer in the case from which we have quoted is very much stronger than the answer in the case before us, for in that case the answer averred that it was impossible to construct the proposed ditch, and stated facts tending to support that averment; and it also averred that the ditch had been abandoned. It is clear, therefore, that we must either directly overrule that case or adjudge

the answer before us to be insufficient. We are, indeed, not required to carry the rule as far as it was carried in that case, for the answer before us is very far from making as strong a defence as was made in the case to which we have referred. Counsel, in speaking of the doctrine of *Indianapolis, etc., G. R. Co.* v. *State, ex rel., supra,* say : "This theory, we think, is clearly answered : 1st. That until the commissioner has done some wrong he could not be called before the court in contempt of its orders. 2d. When the wrong has been done it would be too late." It is obvious that counsel have not succeeded in answering the reasoning of the court in the case referred to. This we say because an order could have been obtained without delay, and the court could have compelled obedience by summary modes. If the appellant had been diligent no loss could have occurred to him or to any other property-owner by reason of a departure from the requirements of the contract.

Our ultimate conclusion is that, whatever view may be taken of the answer, there was no error in holding it bad.

Judgment affirmed.

Filed April 30, 1892.