Racer *et al.* *v.* Wingate *et al.*

No. 16,545.

RACER ET AL. *v.* WINGATE ET AL.

DRAINAGE.—*Ditch, When Not Constructed According to Plans and Speci-*
*fications.—Commissioner's Report.—Rejection.*—Where the plans and
specifications and the order of the court require that a ditch be so
constructed that the banks may have one foot of slope for every
foot of depth, and that the dirt removed from the ditch should be
placed at least two feet from each bank, and given a slope of one
foot to each foot in depth, the construction of the ditch with per-
pendicular banks, and the dirt removed being placed at the required
distance but not being given the required slope, is not a construc-
tion according to the plans and specifications and the order of the
court; and under such a state of facts, the report of the drainage
commissioner that the ditch had been constructed according to the
plans and specifications should be rejected.

SAME.—*Special Finding.—Conclusion of Law.—Construction According*
*to Order of Court.*—The finding of the court "that such open ditch, as
constructed, has been completed by the contractor," does not show
that the work has been done according to the plans and specifica-
tions, or according to the order of the court, and is not, therefore,
sufficient to authorize a conclusion of law that the commissioner is
entitled to a judgment approving his report.

SAME.—*Judicial Notice.*—The court takes judicial notice of the pur-
pose of plans and specifications for the construction of a ditch, re-
quiring the banks to be given a certain slope.

SAME.—*Commissioner's Report.—Exceptions.—Quære.*—Could the fact
that the ditch, as constructed, is as beneficial to those assessed for
its payments as it would have been had it conformed to the plans
and specifications, be put in issue where exceptions are taken to the
commissioner's report that the ditch has been constructed accord-
ing to law?

SAME.—*Ditch.—Rights of Interested Parties.*—While parties assessed
for the construction of a ditch may, if the ditch is not being con-
structed according to the order of the court, have the contractor
and commissioner cited for contempt of court, yet that is not their
only remedy. Those interested in the construction of the ditch
have the right to assume, up to the time the ditch is completed,
that it will be constructed in substantial compliance with the order
of the court, and are not compelled to keep watch over its construc-
tion.

Dissenting opinion by McCABE, J., in which HOWARD, C. J., concurs.

From the Blackford Circuit Court.

*R. Gregory* and *A. C. Silverburg*, for appellants.

*B. G. Shinn, E. Pierce* and *T. E. Ellison*, for appellees.

COFFEY, J.—On the 4th day of June, 1891, Charles A. Rhine, as drainage commissioner, charged with the construction of a public ditch described in the record in this case, filed a report in the Blackford Circuit Court. So much of the report as is necessary to the controversy here, is as follows: "Comes now Charles A. Rhine, drainage commissioner, charged with the construction of said drain, and shows and reports to the court that Henry C. Paul, to whom the contract for the construction of said ditch was awarded, has fully and completely constructed said ditch according to the contract for the construction thereof heretofore entered into between said Paul and a former drainage commissioner charged with the construction of said ditch, and according to the plans and specifications heretofore adopted and approved by this court."

To this report the appellants, who are assessed to pay for the construction of the ditch, filed exceptions upon which issues were formed. The cause was tried by the court, resulting in a special finding of the facts upon which the court stated conclusions of law, and rendered judgment for the appellees, approving and confirming the report above set forth.

The assignment of error calls in question the correctness of the conclusions stated by the trial court upon the facts found. The sole question involved in the case is the question as to whether there should be an adjudication on the facts found by the trial court to the effect that the ditch described in the finding has been completed according to the plans and specifications. The question of the sum to be paid to the contractor is not

involved except incidentally. He is not a party to this suit. He receives his pay from the commissioner of drainage. As the report of the commissioner in this case contains the statement that the ditch has been completed according to the plans and specifications, it is not doubted that its approval by the court would constitute such an adjudication of that fact as would preclude every one from disputing it, so that the contractor would become entitled to receive the full contract price for the work whether he has, in fact, complied with his contract, or has violated it. In this incidental way, and in no other, is the amount to be paid to the contractor involved.

It is not claimed by either party to this suit, that the ditch in controversy has been completed according to the plans and specifications adopted by the court for its construction. It has been solemnly declared by this court time and again that those who pay the assessments have the right to insist upon the construction of the work as it has been established by the report of the commissioners, and by the judgment of the court. It has, furthermore, been held that it is not to be presumed that the court would approve the final report of the commissioner and strike the cause from the docket until satisfied that the work had been completed according to its order. *Indianapolis, etc., Gravel Road Co.* v. *State, ex rel.*, 105 Ind. 37; *Fries* v. *Brier,* 111 Ind. 65; *Smith* v. *State, ex rel.*, 117 Ind. 167.

The finding of the court "that such open ditch, as constructed, has been completed by the contractor," does not show that the work has been done according to the plans and specifications, or according to the order of the court, and is not, therefore, sufficient to authorize a conclusion of law that the commissioner is entitled to a judgment approving his report.

The court carefully omits to find that the work has been done according to its judgment or order, or according to the plans and specifications.    Indeed it could not make such a finding in view of the preceding facts found. The facts found make it plain that there was almost a total disregard of the order directing the work.    The plans and specifications, as well as the order of the court, required the ditch to be constructed with banks sloping one foot to each foot in depth.    They also required that the dirt removed from the ditch should be placed at least two feet from each bank, and given a slope of one foot to each foot in depth.    The finding shows that neither of these requirements has been complied with by the contractor.    The banks were cut perpendicular, and while the dirt removed from the ditch was placed the required distance from the banks it was not given the required slope.    The purpose of these requirements is easily and well understood, and involves matters of which we take judicial notice.    It is well settled that the courts take notice of matters of common notoriety, as well as of the ordinary laws of nature.    Am. and Eng. Ency. of Law, vol. 12, p. 195.

It is a well known fact that a current of water striking a perpendicular bank will ordinarily create a concave, thus causing the bank to fall.    In the case of a ditch, we must take notice, we think, that the falling in of the banks would tend to fill it and obstruct the flow of the water, and thus lessen its usefulness.    The purpose, therefore, of requiring the banks of this ditch to be given a slope of one foot to each foot in depth was to prevent the cutting and falling in of the banks, which would otherwise occur.

The purpose of requiring the dirt removed to be placed at least two feet from the banks of the ditch, and given the slope named in the plans and specifications, was to

prevent it from falling back into the ditch from which it was removed. With the perpendicular banks constantly cutting and falling, by the action of the water, we have no assurance that the dirt deposited on the banks will not soon be reached, and that it will not fall into and obstruct the ditch. The plans and specifications were designed to prevent these results, and the order of the court required that they should be observed. There is no pretense that they have been complied with, and yet we are asked to solemnly adjudge that the work has been performed according to the plans and specifications. If we adjudge that the commissioner of drainage is, under these facts, entitled to have his report approved, which sets forth that the work has been completed according to the plans and specifications adopted by the court, we adjudge that a thing is true which appears upon the face of our judgment to be untrue. We can not consistently say by our judgment that this ditch has been completed according to the plans and specifications when the contrary appears on the face of our record.

We do not think the appellants can complain simply because the ditch may be constructed with greater capacity than that contemplated by the plans and specifications, but they have just cause to complain, we think, if the banks of the ditch and the dirt excavated are not given the required slope, if thereby the value of the ditch to those who are required to pay for it is lessened.

It is said, however, that it appears from the special finding of facts that the ditch constructed by the contractor is larger than the ditch called for by the plans and specifications, and as beneficial to those who are to be assessed to pay for it, as it would have been had the order of the court been followed, and therefore they can not be heard to complain.

In answer to this position we would say (1) that there

Rader *et al. v.* Wingate *et al.*

is no finding of the court that the ditch, as constructed, is as beneficial to those assessed for its payment as it would have been had it conformed to the plans and specifications. Such a conclusion is a mere inference from the fact that it is wider than the one called for. We do not think such an inference follows, for the reasons above stated. (2) There was no issue involving such a question in the trial court. The simple issue for trial related to the question as to whether the work was done according to the plans and specifications under which the work was ordered, the appellants alleging that it was not so done, setting out many particulars in which there was a departure.

Indeed, we are unable to conceive of how such an issue could be formed in this case. Had this been a suit by the contractor against the drainage commissioner to recover compensation for his work, such an issue, perhaps, might have been tendered and tried; but we do not think such an issue could be tendered where the only question for consideration was as to whether the work had been done according to the order of the court. It is enough, however, to say that no such issue was tendered in this case, and yet we are asked to cut off the possibility of making such an issue between the proper parties by adjudging that the work has been done according to the plans and specifications.

Again, it is said that the remedy of the appellants, if the work was not being done according to the plans and specifications, was to have the drainage commissioner and contractor cited for contempt for disobeying the order made by the court for the construction of the ditch, and as they did not avail themselves of this remedy they should not be heard now.

We are willing to concede this remedy to its fullest extent, but when and how is it to be exercised, and when

does the right to exercise it cease?  Is it the law that those who are assessed for the construction of a public ditch must keep constant watch and ward over the commissioner and contractor, and when it is discovered that there is a departure from the order of the court, hasten to the county seat, employ a lawyer, and cite them to show cause why they should not be fined for contempt? We think not.  We think that those interested in the ditch have the right to assume, up to the hour work ceases, that it will be finished in substantial compliance with the order of the court, and that they may exercise their right to cite the commissioner and contractor at any time before they are cut off by the approval of the commissioner's final report.  But while we concede the remedy above mentioned, we are unwilling to hold that it is the only remedy.  To so hold is to say that the appellants in this case have no right to be here.  If the special finding in this case disclosed the fact that the ditch in question was constructed only one-half as wide, and that it contained only one-half the depth called for by the order of the court establishing it, would any one doubt the right of the appellants to have it set aside on their exceptions?  To hold that citation for contempt is the only remedy, is to hold that those who are interested in the ditch have no right to except to the final report of the commission.  We think they have both remedies. Whether they have other remedies, we need not inquire.

If it be said that it is now impossible to complete the construction of the ditch according to the plans and specifications and the order of the court, by reason of the great width at which it has been cut, and that a refusal to approve this report may result in a loss to the contractor, the question naturally arises:  Who is at fault? Certainly not the appellants, for the finding of the court

shows that they objected to and protested against the manner in which the work was being done, at every step, and that the commissioner and contractor both had notice of such objections and protests. We do not think it can be successfully maintained that courts are organized to relieve parties from the consequences of the willful violation of their contracts. But we think no such question is before us. We are not permitted to look into the future and anticipate questions that may arise upon our enforcement of the law. When we have determined and applied the law in the case before us, our powers and duties are at an end, and we have no concern whatever as to what may be the consequences.

We have carefully considered the case of *Indianapolis, etc., Gravel Road Co.* v. *State, ex rel., supra,* and *Racer* v. *State, for Use,* 131 Ind. 393, and have been unable to bring our minds to the belief that they control the questions involved in this case.

Each of these cases was an action to recover assessments. It was held, and we think properly, that it was no defense to such an action that the work was not completed according to the plans and specifications and the order of the court, nor was it a defense to say that the commissioner and contractor were not prosecuting the work pursuant to the plans and specifications.

The reason given in these cases for so holding is, that under the statute providing for the construction of drains the commissioner has the right to collect the assessments before the drain is constructed and without regard to the condition of the work. Indeed, it is no uncommon thing to collect the whole assessment before the work is completed in order to be able to pay the contractor when he has complied with the terms of his contract.

How the rule thus settled is to be made applicable to

Racer *et al. v.* Wingate *et al.*

the question involved in this case, we are unable to per-
ceive. The collection of assessments to meet the ex-
penses of constructing a public ditch is one thing, and
determining the question as to whether it has been com-
pleted according to the order of the court is quite an-
other and different thing.

In what we have said we have not been unmindful of
the importance of the question involved in this case.
We do not believe that plans and specifications, and the
orders of court based thereon, should receive such strict.
construction as to deter bidders from undertaking the
work at a price approximating its reasonable value.
Where there is a substantial compliance with the order
of the court the contractor should be paid the contract
price.

On the other hand, where there is not a substantial
compliance with the plans and specifications, those who
are to be assessed to pay for the drain should be pro-
tected, for the fault is not to be attributed to them. If
it is to be understood that those who undertake to tax
themselves for these improvements are to have no pro-
tection against the violation of the contract under which
their work is done the people will be deterred from un-
dertaking such work.

In our opinion, the judgment in this case should be
reversed, with directions to the circuit court to restate
its conclusions of law and to enter a judgment rejecting
the commissioner's report.

Filed Feb. 13, 1894; petition for a rehearing overruled May 10, 1894.

### DISSENTING OPINION.

McCABE, J.—I can not agree with the conclusion
reached by my brothers in this case. Charles A. Rhine,
as commissioner of drainage for Blackford county, was
charged with the construction of a certain ditch or drain,

known as the Isaac Wingate *et al.* ditch, established by the order of the circuit court of Blackford county, in March, 1885, under the drainage law of 1881, and the amendatory statute of 1883.    Section 4273, R. S. 1881, *et seq.;* Elliott's Supp., sections 1175 to 1183.    Said Rhine filed his report in said court, showing the completion of the work of constructing said ditch, and asking to be discharged from further liability on account of said work.    The appellants filed exceptions to said report, and upon the issues formed a trial by the court resulted in a special finding of the facts, upon which the court stated its conclusions of law, whereon appellees had judgment.    The material parts of the special finding are as follows:

"That at the March term, 1885, of the Blackford Circuit Court, the court ordered and adjudged that said ditch be constructed upon the following route, to wit: (then follows a description of the route by metes and bounds); that by the order and judgment of the court establishing said ditch, the same from station 0 to station 43, was ordered to be constructed as a tile ditch, and from station 43 to the terminus, the same was to be an open ditch; that the same was to be constructed one foot wide in the bottom from station 43 to station 363, and from station 363 to station 470, two feet wide on the bottom; and from station 470 to station 585, four feet on the bottom; and from station 585 to station 629 (the outlet of said ditch), was to be cut and constructed (whenever any construction was necessary) so that the bottom would be ten feet in width; that the banks of said ditch were ordered to be constructed through the open part thereof, with a slope of one foot on each side to one foot in depth, and to have an uniform slope throughout the entire length of said open ditch; that the trees and stumps in the line of said ditch were to be grubbed out, and the logs, brush and rubbish were to be removed to

a distance of at least ten feet from each side of said
ditch; the dirt excavated from said ditch was to be placed
at least two feet from each bank of the ditch, and to have
a slope of one foot to one foot in depth; that the bottom
of said ditch was to be made smooth and level, and to
have a uniform fall; that after the order of said court
establishing the work, the same was referred for con-
struction to one Jesse H. Dowell who afterwards resigned,
and one Smith Casterline was appointed drainage com-
missioner in his place to superintend the construction
of said ditch; that said commissioner Casterline let the
contract for the construction of said work to one Henry
C. Paul, who gave bond for the completion thereof; that
afterwards said commissioner Casterline resigned as such
commissioner of drainage, and Charles A. Rhine, Esq.,
was appointed, by the court, commissioner of drainage,
to take charge of and superintend said work; that under
the direction, charge, and supervision of said drainage
commissioner Rhine, the said Henry C. Paul dug, con-
structed and built the ditch in controversy; that the
ditch was constructed over and along an old ditch known
as Big Lick Creek, and at many places said old ditch had
washed wider than the specifications; that in the con-
struction of said ditch the banks thereof were not given
a slope of one foot to one foot in depth, but the same
were dug perpendicular, and from station 43 to station 363
the same was constructed from three to twelve feet wide
in the bottom, and from station 363 to station 470 from
six to eighteen feet wide in the bottom, and from station
470 to station 585, from 7 to 15 feet wide in the bottom;
that the trees and stumps were grubbed out and brush
and logs were removed at least ten feet from each bank
of the ditch, the dirt excavated therefrom was deposited
two feet from each bank thereof, but did not have a slope
of one foot to one foot in depth; that in some places

along said ditch the banks thereof are wider in the center than at the top or bottom of said ditch, caused by washing of the same; that the whole of said ditch is dug and constructed a great deal larger than the original plans and specifications called for, but no extra cost was occasioned thereby; that the objectors and exceptors herein at all times, from the commencement of the construction of said ditch to the trial of this cause, have continuously objected, both to the contractor and commissioner of drainage in charge, to the manner and character of the construction of said ditch, and that the contractor and the commissioner have at all times had knowledge of such objections; that said ditch has a uniform fall from upper to lower end thereof; that said exceptors are, each of them severally, owners of land affected by the said ditch, and assessed for the construction thereof; that all of said ditch, except 4,300 feet, is open ditch, the 4,300 feet being tile ditch at the upper end thereof, which tile part was made under the order and direction of the court, and without objection by any one, and which tile part has been fully completed as ordered by the court; that such open ditch, as constructed, has been completed by the contractor.

"Jno. M. Smith, Special Judge."

And the court states, on the above facts found, as its conclusions of law:

"1st. That the report of the commissioner of drainage should be confirmed by the court."

The assignment of errors questions the correctness of the conclusion of law.

The only reason assigned in appellants' brief why the conclusion of law is incorrect is, that the findings of fact show that the ditch was dug or constructed a great deal deeper and wider than the plans and specifications call for, and that the banks were dug perpendicular instead

of having a slope of one foot to one foot in depth, and that the dirt taken out of the ditch and placed on the banks was not given the same slope, all of which was required by the specifications.

It was said by this court, in *Smith* v. *State, ex rel.*, 117 Ind. 174, that ''Those who pay the assessments have the right to insist upon the construction of the work as it has been established by the report of the commissioners, and by the judgment of the court.''·

But the work here has been more than completed. The deviation from the plans and specifications consists chiefly in doing more and a greater work than was required by the plans and specifications, and that without adding anything to the cost of the work to those whose lands are to be assessed to pay for it; that is, the ditch has been made deeper and wider than the contractor need to have done, but the cost is no greater than if the work had stopped at the line of the plans and specifications.

It is difficult to see how the appellants are injured by such excess of work for their benefit. If such excess was an injury to them in any way, that was a question of fact which it was incumbent on them 'to make manifest; the burden of showing that fact was upon them. In such a case, a failure to find either way is equivalent to a finding against the party having the burden of proving such fact. *Henderson* v. *Dickey*, 76 Ind. 264; *Graham* v. *State, ex rel.*, 66 Ind. 386; *Johnson* v. *Putnam*, 95 Ind. 57; *Parmater* v. *State, ex rel.*, 102 Ind. 90; *Glantz* v. *City of South Bend*, 106 Ind. 305; *Louisville, etc., R. W. Co.* v. *Hart*, 119 Ind. 273.

The apellants had the burden of that issue, because they alleged the fact in their exceptions affirmatively, and because the presumption is that the judgment of the court below is right until the contrary is made to appear affirmatively in the record by the party assailing it.

*Myers* v. *Murphy*, 60 Ind. 282; *Hunter* v. *Thomas*, 37 Ind. 145; *Lime City Building, etc., Assn.* v. *Black*, 136 Ind. 544; *Ferguson* v. *Hull*, 136 Ind. 339.

Having failed to show, by the special finding, that the excess of work was an injury to them, and as the finding necessarily shows that all the work was done that was required by the order of the court establishing the ditch, they fail to show any available cause for complaint. The failure to give the ditch and the dirt deposited on the banks thereof the required slope may present a somewhat different question.

We are asked to hold as matter of law, and the prevailing opinion accordingly holds, that such departure was injurious to the ditch, or rendered it less useful and valuable for the purpose designed than if the banks and the dirt deposited thereon had been sloped, as required by the specifications and order of the court. With great respect for the opinion of my brothers I can not agree with them in that conclusion. I concede to the fullest extent that courts ought to, and do, take notice of the usual course of nature and its manifestations that belong to the class of uniform occurrence and common notoriety. I concede, too, that water washing against a perpendicular bank in a ditch will be liable to wear the bank so that it would become concave in shape. To what extent this effect may be produced depends largely on the kind of soil through which the ditch is cut. There is nothing in the special finding showing the kind of soil, whether it was loose, sandy loam, hard pan, or hard clay. Without such information this court could not judicially know much about its tendency to wash and wear. I concede, too, that such washing will have a tendency to cause the bank to crumble and fall into the ditch. But I do not think it follows that the courts can

judicially know that such crumbling and falling would materially obstruct the ditch. Especially is that so in this case. If the special finding of facts showed that the ditch had been cut so deep that the perpendicular banks were fifty feet high then I concede that this court might take judicial notice that the usual course of nature in causing such banks to crumble and fall would very likely obstruct the ditch.

But no such state of facts is shown in the special finding. On the contrary, the special finding fails to show how deep the ditch was required to be dug, or how deep it actually was dug, or how deep it actually was at the time of making the report in question.

The ditch was to have been constructed from station 585 to station 470, four feet wide in the bottom, but it was actually made 7 to 15 feet wide. Now, suppose as a matter of fact, that where it is 15 feet wide the banks are no more than four feet high, that is, the ditch but four feet deep there, which would be as deep as is ordinary in such ditches. Can this court adjudge, as matter of law, that such banks, in the usual course of nature, will crumble and fall so far as to obstruct the whole 15 feet in width, or far enough to make the channel of the ditch narrower than four feet?

To suppose that they would go that far would be to suppose that nature would make a very great and extraordinary land slide. It would be to suppose that each four foot bank would fall and spread over the level surface of the bottom of the ditch a distance of $5\frac{1}{2}$ feet from such bank. Thus making each bank spread $1\frac{1}{2}$ feet wider than it is high and the two four-foot banks fall and cover a space of 11 feet in width on a level. I do not believe that such banks would or could, in the course of nature, fall and cover that much level surface

in the bottom, nor do I believe that this court can take
judicial knowledge that it would do so.    But, conceding
that it can, and yet we have left a ditch four feet wide
in the bottom, fully up to the dimensions required by
the specifications, with the banks sloped by the operation
of the laws of nature in substantial compliance with the
specifications and order of the court.    It will not do to
say that, in the absence of the height of the banks and
the depth of the ditch in the special findings, we can not
suppose such banks to have any particular height or
the ditch any particular depth.

We judicially know that the ditch has some depth and
the banks some height.    That being so, and their height
not being shown by the special finding, it may turn out
in fact that they are of the very height I have supposed.
Now, if that depth and height were not great enough as
compared with the known width, to cause the banks in
the course of nature to crumble and fall to such an ex-
tent as to make the channel narrower than the specifica-
tions called for, then this court can not know, either ju-
dicially or otherwise, that the perpendicularity of the
banks was injurious to, or impaired the usefulness of, the
ditch.

But that is not all.    The special finding shows that
the work of construction began as far back as June, 1885,
four years prior to the time of the report of the comple-
tion of the work now in question.    If it took four years
to complete this vast work, portions of it must have been
completed years before the final report; that is, portions
of the ditch must have been dug long enough before the
report in question to give the laws of nature time enough
to have their full force and effect in causing the banks
to crumble and fall and obstruct the ditch, if ever they
would do so.    Yet the special finding states that

"Said ditch has a uniform fall from upper to lower end thereof."

This could not be true if the course of nature could, on account of the perpendicularity of the banks, cause them to fall in to such an extent as to obstruct the ditch. The uniformity of the fall of the ditch is admitted to be true by the appellant's exceptions to the conclusion of law; because an exception to the conclusions of law admits that the facts have been fully and correctly found. *Hartman* v. *Aveline*, 63 Ind. 344; *Robinson* v. *Snyder*, 74 Ind. 110; *Helms* v. *Wagner*, 102 Ind. 385; *Wynn* v. *Troy*, 109 Ind. 250.

As to the dirt deposited on the banks, the special finding shows it to have been "deposited two feet from each bank,   *   *   but did not have the slope of one foot to one foot in depth;" but unlike the finding as to the slope of the banks, where it goes on to state, after stating the lack of such slope, it states that they were perpendicular. No such statement is made as to the want of the proper slope in the dirt. The finding does not state whether it was more than the required slope or less that was given to the dirt deposited on the bank. Either would be consistent with the finding. There is an insuperable barrier to construing it to mean less than the required slope; that is steeper than one foot slope to one foot in depth. There were only two charges made in the exceptions to the report as to the deposit of the dirt. One was that it was "deposited immediately on the brink of the ditch," and the other was that the "other parts thereof scattered promiscuously over the adjacent country in piles and dumps of irregular shapes and sizes, and without regularity or uniformity,   *   *   *   and none of it has the same slope as the sides of the ditch, either as made or required to be made by the order   *   *   *   and specifications adopted by the court."

Racer *et al. v.* Wingate *et al.*

The plain meaning of this exception, it seems to me, is that a part of the dirt was placed immediately on the brink of the ditch, and the balance was scattered over the adjacent country without the slope required. That part charging it to have been placed on the brink of the ditch is found untrue by the court. The other part must be held to mean was deposited so far away from the ditch that it can make no difference how it is sloped. Be that as it may, it appears clearly enough that it was not left more perpendicular than one foot slope to one foot in depth, otherwise it would have been so charged and so found; on the contrary, it appears clearly enough that the slope was more than one foot to one foot in depth. The finding, if ambiguous, must be construed, if consistent with its language, to be within the issue, because if it be construed to mean less than one foot slope to one foot in depth, it would have to be disregarded as being outside of the issues. *Pittsburgh, etc., R. W. Co.* v. *Adams,* 105 Ind. 151; *Boardman* v. *Griffin,* 52 Ind. 101; *Thomas* v. *Dale,* 86 Ind. 435; *Brown* v. *Will,* 103 Ind. 71.

If the departure in sloping the dirt consisted in making a greater slope than that required then such departure was not injurious, was immaterial, and furnished no more ground for complaint by appellants than the digging the ditch too wide or too deep.

It is said that there is no finding that the ditch, as constructed, though larger than the specifications call for, is as beneficial or useful as it would have been had it conformed to the specifications and 'order of the court establishing it. This, I think, is a mistake. While there is no finding to that effect, yet this court is as much bound to take judicial notice of the laws of nature as to the effect thereby produced in the enlargement of the ditch as in the case of perpendicular banks. Therefore we must judicially know that more water will flow

through a large ditch than through a smaller one, and that the larger ditch will carry off the water in ordinary times just as well as the smaller ditch. We must also judicially know that this county is subject to great freshets and heavy rains at times, and that at such times the larger ditch would carry off the water more effectually, and be less liable to injure the banks, and therefore we know judicially that the larger ditch is not only as valuable and useful as the smaller one but is more so.

With all due deference and respect for the opinion of my brothers, I am wholly unable to concur in the holding that there was no such issue. Appellants, in their 9th exception to the report in question, after stating the departures from the specifications, charged the effect thereof as "greatly obstructing the free flow of the water through the said ditch, so that the said ditch is worthless, is not a permanent structure, is not calculated to perform the offices of a ditch in a proper and reliable way;" and in the fourteenth exception that it was "unfit for the purposes for which it was made."

It can hardly lie in the mouth of the appellants to say now that no such issue was involved; indeed, they have not so contended in this court. If no issue could properly be made except the one simple question, viz: Whether the ditch had been completed in strict conformity to the plans and specifications, then such a trial, it is easy to see, would soon degenerate into a controversy over mere bald abstractions and technical niceties as to whether the ditch had been dug an inch or two too deep or an inch or two too wide; it would soon become a controversy over mere shadows to the neglect of substance. Nor can I agree with the prevailing opinion that the confirmation of the report would be an adjudication that would preclude those assessed to pay the expense from raising the question of damage resulting from over-

stepping the boundaries prescribed by the plans and specifications by the commissioner and contractor in the construction of the ditch.

But if I am wrong in this, and the question presented by the commissioner's report and exceptions thereto is whether the work had been completed according to the plans and specifications simply and purely, what then? As already observed, the work has been more than done. There can be no further completion thereof. It was said by this court, in a ditch case, in *Smith* v. *State, ex rel., supra,* at page 172, that: "In practice the cause remains on the court's docket until the final report of the commissioner is made and approved." Now, if the report in the case at bar can not be approved until the specifications have been strictly complied with, then it never can be approved because the ditch has been dug too large, and it is physically impossible to make it smaller. But suppose this court should solemnly adjudge that the report can not be confirmed until the banks are sloped in accordance with the specifications, and remand the cause; and suppose the attempt is made to so slope them, and the owners of the land concerned should resist such attempt on the ground that the boundary of the ditch was already surpassed; such resistance must prove successful. We then would have an adjudication that could not be gotten rid of, and would bind all the parties to the effect that the commissioner's report could never be received, and he could never be discharged by the circuit court.

If the defect in the ditch pointed out in the exceptions was such that it could be remedied, if the work had fallen short of the requirements of the plans and specifications, and had not surpassed them, then, undoubtedly, the land owners might successfully object to the

approval of the report, as well as to avail themselves of other remedies.

However, many of these questions are unimportant here, because whether they are decided the one way or the other ought not to prevent an affirmance of the judgment confirming the commissioner's report, on account of the conduct of the appellants. Because here was a great public work being constructed under judicial sanction for their benefit, twelve or thirteen miles of ditch going on for four years, at a cost of over $15,000, and the only departure from the plans and specifications being that too much work is being done so far as benefits in the way of drainage are concerned, but because of work far in excess of that required by the specifications and order of the court, there is a departure from the specifications and order by the contractor and the drainage commissioner to the extent of constructing a ditch with perpendicular banks instead of being sloped, and dirt excavated from the ditch and placed on the banks is not sloped; the appellants have suffered this to go on without taking any other action than simply to object until the work is finished, and they now come in and object to an approval of the report of the commissioner that the ditch is completed. They do not point out any particular in which the work could be made any more complete under the order and specifications establishing the ditch. Indeed, they show it to be physically impossible now to complete the ditch in exact accord with the specifications and order establishing it, and thereby it would seem they hope to escape *in toto* from paying anything for the benefits they have received. They never applied to the court so far as appears by the record, and asked it to order its officer to keep within the bounds of the order and specifications in the construction of the ditch,

which they might have done successfully, and saved the rights of everybody as well as themselves.

On the contrary, with full knowledge of all that was going on, they suffered the contractor to go on and expend large sums of money for their benefit, and have laid still until all the rights of the contractor must be lost to him if they are now allowed to avail themselves of an objection which, if seasonably made, might have been effective without inflicting loss on anybody for their benefit.

In a suit brought by the State on the relation of this same commissioner of drainage, in the case of *Racer* v. *State, for Use*, in which it was sought to collect assessments on the same ditch, and appealed to this court and decided in 131 Ind. 393, at page 407, it was said by ELLIOTT, J., speaking for the court, that "We regard the answer as bad, although it be construed as sufficiently showing that the work was not done, or being done, as the contract required. In affirming this we do not mean to adjudge that the commissioner has authority to permit a material or injurious departure from the contract. We affirm, on the contrary, that he has no such authority. He may, perhaps, in the exercise of a sound and reasonable discretion, permit departures of an immaterial nature, or which can not result in the injury of the land owners assessed, but he can not authorize a change in the mode of doing the work to the substantial injury of those upon whom the burden of paying for it is cast by law. But it by no means follows that because the duty of the commissioner is to compel the performance of the work in substantial compliance with the contract, his failure to do so will constitute a defense to a suit to enforce an assessment. The land owner is not without remedy, but his remedy is not by way of defense to the assessment. His remedy is to make application to the

court having control of the work, and whose agent the commissioner is, to compel a performance of duty by the contractor and the commissioner. This was expressly decided in the case of *Indianapolis, etc., Gravel Road Co.* v. *State, ex rel., supra.* In that case it was said: 'The remedy is, therefore, to apply to the court, and, through its order and intervention, secure the due execution of the work.' The answer in the case from which we have quoted is very much stronger than the answer in the case before us, for in that case the answer averred that it was impossible to construct the proposed ditch, and stated facts tending to support that averment; and it also averred that the ditch had been abandoned. It is clear, therefore, that we must either directly overrule that case or adjudge the answer before us to be insufficient.''

The answer referred· to set up the identical facts found here in the special finding. The answer was held bad.· The very same effect would be given to those facts by holding the conclusion of law correct in this case that was given to them in that case, by holding the answer setting them up insufficient.

I am unable to perceive any reason why the case I have quoted from and the case it quotes from, are not authority directly in point in this case. I concede that exceptions to a final report of a drainage commissioner are ordinarily quite a different thing from objections to the collection of assessments to defray the expense of the construction of the ditch. But that difference only exists in its full force where a part of the work remains unperformed. In that case there would be no ground for resisting the payment of assessments, because the statute authorizes their collection in advance of the completion of the work. But where, as shown in those cases, the defense relied on is that the boundaries of the speci-

fications have been exceeded in the construction of a greater, larger, and more valuable work than called for by the specifications, so that strict and literal compliance with such specifications is impossible thereafter, there can be no difference in the effect of such facts, whether they are urged as a defense to assessments or as objections to the confirmation of the report. When urged as a defense to the collection of assessments, it can not be said that such defense fails because the work may thereafter go on to completion as in case where the ditch is only half dug out; but the defense fails for the same reason that objections to the confirmation of the commissioner's final report ought to fail, namely, that the facts show, in the one case, that the land owner is resisting something that does not harm him, and, in the other, that he is filing exceptions to a judicial act that in no way harms him. That being the ground on which those cases rest, they apply with equal force to exceptions to the final report of the commissioner where, as in this case and the one quoted from, the exceptions proceed upon the theory that the work is not expected to be further prosecuted.

The only effect of sustaining these exceptions is not to secure the completion of unfinished work, or work left undone, but, if it has any effect, it is to prevent the collection of assessments. I do not see how it can be successfully maintained that the sustaining of these exceptions is to have no effect whatever. Nor can I agree with the prevailing opinion that the reception and confirmation of the report will constitute an adjudication that will preclude an abatement of the amount to be paid to the contractor. He is not a party to this proceeding, and hence, in a suit against the commissioner for his pay, this adjudication would not bind him, and if it did not bind him, it could not bind the commissioner or any-

body else.   *Maple* v. *Beach*, 43 Ind. 51; *Glenn* v. *State, ex rel.*, 46 Ind. 368; *Bartlett* v. *Kochel*, 88 Ind. 425.

I heartily agree with the majority that courts are not organized to relieve parties from the consequences of a violation of their contracts.   Nor do I believe, on the other hand, that courts are authorized or organized to enable a party to take from another under the forms of a contract the benefits of his labor without any compensation whatever.   The contractor must recover on the contract, if at all.   If he. can not recover on that for his labor and expenditure for the benefit of the land owners, he can not recover at all.   When the parties stand on equal footing each may insist on a literal compliance with the terms of the contract.   But that principle is not of universal application.   Where a party has received benefits from an imperfect compliance with the terms of a contract, his conduct may be such that every principle of morality and justice alike forbids relieving him from such contract.

Where a ditch was constructed under a contract claimed to be void, without deciding whether the contract was void or not, this court said:   "Appellant had full knowledge that the ditch was being constructed by Bozeman under the contract, and that he was expending his money in constructing it, and took no legal steps to stop the work or question the proceedings of the county board until this suit was commenced, several months after the work was accepted by the board as completed, and after the certificate by the auditor  *  *  *  had been delivered to Bozeman, and the amount due him from the several land owners had been placed upon the tax duplicate for collection.   Having thus stood by, and in silence as to the contract, appellant can not now, in this collateral attack, overthrow the contract and thus escape payment."   *Montgomery* v. *Wasem*, 116 Ind. 343 (347).

"Where, in giving notice in a drainage proceeding, there is.an attempt to comply with the statute, and some notice is given, though insufficient, parties who have actual knowledge of the petition and proceedings under it, and that money has been expended on the faith that the proceedings are valid, and make no objection, will be presumed to have acquiesced in their validity, and can not afterwards move to dismiss for want of notice." *Peters* v. *Griffee*, 108 Ind. 121.

In *Taber* v. *Ferguson*, 109 Ind. 227, at page 231, this court said: "That an estoppel may be made available in a proceeding to recover a street assessment is well established by the authorities. The rule is thus stated in a late work: 'Thus, a property-holder can not quietly permit money to be expended in work which benefits his land, under a contract with the city, and then deny the power of the city to make the contract.' This principle has been fully recognized and strongly asserted by this court."

In *Hellenkamp* v. *City of Lafayette*, 30 Ind. 192, at page 194, it was said: "A property holder can not quietly permit money to be expended in work which benefits his land, under a contract with the city, and then deny the power of the city to make the contract."

In *Muncey* v. *Joest, Treas.*, 74 Ind. 409, at page 413, another ditch case, it was said: "The second cause upon which appellant bases his right to an injunction would be a sufficient one if urged by a person who had not estopped himself by his silence. If the appellant had made the proper resistance to the prosecution of the work, and made it without delay, he would have been entitled to relief. * * As the appellant made no objection until after the work had been fully completed, he is not now in a situation to complain of the insufficiency of the notice of the letting of the contract. Having received the full

benefit of the work done by the contractor, he can not now escape payment upon the ground that proper notice of the letting of the contract was not given.    *    *    * The rule is more especially applicable to cases where a party, being cognizant of his rights, does not take those steps to assert them, which are open to him, but lies by and suffers other parties to incur expenses and enter into engagements and contracts of a burdensome character. This doctrine has often been adopted and enforced by this court.''

To the same effect is *City of Evansville* v. *Pfisterer*, 34 Ind. 36, and many other cases in this court. I see no reason why these principles are not applicable to exceptions and objections to the confirmation of the final report of the drainage commissioner, where such objections do not proceed on the theory of securing a further prosecution of the work, but proceed upon the theory, as here, that the work is not to be received at all by the court.

For these reasons I am of opinion that the judgment ought to be affirmed.

HOWARD, C. J., concurs in the dissenting opinion.

Filed Feb. 13, 1894.