### CITY OF VALPARAISO *v.* SPAETH.

[No. 20,534. Filed December 12, 1905. Mandate modified January 24, 1906.]

1. MUNICIPAL CORPORATIONS.—*Sewers.*—*Construction by County.* —*Negligence.*—*Statutes.*—Under the act of 1899 (Acts 1899, p. 164, §2), providing that before boards of commissioners make an improvement of a highway, part of which is within the cor-

porate limits of a city, such boards shall present the plans and specifications of the proposed improvement to the city council and obtain its authority in writing to construct same, such city is liable for negligence for failing to establish proper sewers to carry off diverted waters and discharging same upon plaintiff's lot, though such county board made such improvement. p. 18.

2. MUNICIPAL CORPORATIONS.—*Streets.*—*Control.*—Municipal corporations have absolute control over their streets and other public ways.   p. 20.

3. SAME. — *Streets.*—*Grading.*—*Liability.*—*Negligence.*—Municipal corporations may grade their streets by cutting and filling and are not liable therefor except where such work is done negligently.   p. 20.

4. SAME.—*Streets.*—*Side Ditches.*—*Waters.*—A municipal corporation may construct side ditches in the drainage of streets and is not liable because the water therein drains upon lots of a lower level, unless guilty of negligence in the construction of such ditches.   p. 21.

5. SAME. — *Waters.* — *Diversion.* — Municipal corporations are liable for damages done by the collection of surface-waters or the change of natural watercourses unless they provide an adequate outlet therefor.   p. 21.

6. SAME.—*Sewers.*—*Unprecedented Floods.*—Municipal corporations are not liable for the overflow of waters from its sewers and ditches, caused by an unprecedented flood.   p. 22.

7. APPEAL AND ERROR. — *Complaint.* — *Answer.* — *Demurrer.* — *Harmless Error.*—*Waters.*—Where a complaint alleges damages by a city's collection and discharge of the waters of ordinary rainfalls, sustaining a demurrer to an answer of an unprecedented flood is harmless, since evidence thereof was admissible under the general denial already pleaded.   p. 23.

8. EVIDENCE.—*Unprecedented Floods.*—*Waters.*—*Municipal Corporations.*—In an action against a city for damages for collecting and discharging the waters of ordinary rainfalls upon plaintiff's lot, it is error to exclude evidence by defendant that the rainfall causing the damage was an unprecedented flood. p. 24.

9. APPEAL AND ERROR. — *Reversal.* — *Mandate.* — *Modification.* —*Death.*—The mandate of a judgment of reversal will be modified, upon notice of appellee's death, to take effect as of the date of submission of the cause.   p. 24.

From Porter Superior Court; *A. C. Capron,* Special Judge.

Action by Wilhelmina Spaeth against the City of Valparaiso. From a judgment for plaintiff, defendant appeals. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Reversed.*

*H. H. Loring,* for appellant.

*T. H. Heard* and *William S. Hamilton,* for appellee.

HADLEY, J.—Action for damages for negligently causing the overflow of the plaintiff's lot.

Proceeding under the act of 1899 (Acts 1899, p. 164, now repealed, the provisions here involved being in substance reënacted in Acts 1901, p. 449, §§1, 2, §§6899, 6900 Burns 1901) fifty freehold voters of Center township, Porter county, in which township the city of Valparaiso, of 6,000 inhabitants, is located, on April 24, 1899, filed with the board of county commissioners their petition for the improvement, by grading and graveling, of a certain highway in said township which extended into the corporate limits of said city, and which extension within the city was over Campbell street, a north and south unimproved street, to Haas street, a distance of more than eighty rods. Whereupon the commissioners appointed a surveyor and reviewers, who proceeded under the law to view, survey, establish grade, and make a profile of details, determine the quality and depth of gravel, and cost of improvement, and on May 16, 1899, filed with the commissioners their report, as required by the statute. For the grade of the street the surveyor and viewers adopted the grade established by the city council in December, 1895, by ordinance. The common council of appellant city having given its consent to said improvement and ordered it to be made, as provided by section two of said act of 1899, the county commissioners ordered an election, which resulted in a majority vote of the township, including the city, being cast in favor of the proposed improvement, as exhibited by the plans and profile made by the surveyor and viewers. A contract was let by the commissioners, and the improve-

ment was completed and accepted in July, 1901. Eighty rods south of the Grand Trunk railroad, Campbell street is intersected by Pearl street, running east and west. The west end of the plaintiff's lot abuts on Campbell street, and the north side thereof on Pearl street. Between the Grand Trunk railroad and Pearl street, and east of Campbell street the general slope and drainage of eight or more acres is to the southwest, with frequent slight elevations and depressions in the surface. Campbell street at the crossing of the Grand Trunk railroad is about twenty-five feet higher than at the west line of plaintiff's property. Before the improvement of Campbell street the storm water falling on said eight or more acres, flowing south and westwardly, found its way along the depressions, and between the plaintiff's lot at Pearl street and the Grand Trunk railroad, crossed Campbell street through two culverts, one of which some of the witnesses called a bridge. In the execution of the improvement, the culverts mentioned were removed from Campbell street, the watercourses filled up to grade, and side ditches so made as to collect and carry in the east side ditch, down to the neighborhood of the plaintiff's property, all the surface-water theretofore distributed and discharged to the westward of Campbell street through said culverts. Near the southwest corner of the plaintiff's lot is the lowest point for several hundred feet, to the south, east and north, so that surface-water flows to this point from the south near Haas street, from the east along Pearl street to Academy street, and from the north on Campbell street. The east sidewalk of Campbell street, as improved, is twenty-four inches higher at the northwest corner and thirty inches higher at the southwest corner, than the plaintiff's lot, the side ditch twelve inches lower than the sidewalk, and the crown of the roadway seven inches higher than the sidewalk. Pearl street, so improved, is also several inches higher than the plaintiff's lot. In the improvement of Campbell street no provision whatever was made by any

one, nor has any since been made, for the escape of the storm water collected and carried to the plaintiff's property by the improvement, which there accumulated in a large body, flowed in and upon the plaintiff's lot, flooded the premises, filled her cisterns and cellar with foul water and filth carried from the streets, washed and destroyed the foundation of her dwelling-house, thereby rendering it uninhabitable, to her great damage, etc.

The complaint, alleging, in substance, the foregoing facts, is in two paragraphs. The first counts upon the negligence of appellant in failing to provide a means of escape for the large body of surface-water collected and cast upon the plaintiff's premises by the improvement of Campbell street. The second, upon negligence in maintaining a system of drainage from Campbell and Pearl streets whereby no way of escape was provided for the large body of storm water that was collected, carried and discharged upon the plaintiff's premises. The case went to trial on the general denial and the six-year statute of limitation. There was a trial by jury, and verdict and judgment for appellee.

There are divers assignments arising upon the pleadings and motion for a new trial, but appellant's counsel advises us that "the law governing municipalities in dealing with surface-water in the grading of its streets is the question to be decided in this case."

Preliminarily to the principal question appellant's attorney argues that, as the proceedings were begun before and accomplished by the agents of the county commissioners, under authority conferred by the legislature, and that without any agency, oversight, or active participation of the city, the latter is not liable for a negligent performance of the work, or for the maintenance of a system of drainage established by the county under legal authority.

(1)   In this contention appellant cannot be sustained. In the passage of the act of 1899, *supra,* the lawmakers were very considerate of the rights of municipalities. Under its provisions, the authority of the county commissioners to improve a street in a city, as a part of a country road, is rooted in the consent of the common council and expressed approval of a majority of the voters of the city and township. Under the act, beyond making the survey, adopting a grade, a general plan, and making a profile thereof, the commissioners have no power to enter the city limits for any purpose of improvement until after they have obtained the fullest consent of the city council to the proposed improvement, expressed in the most unequivocal manner. The following is the language of the law: "Where any road or roads to be improved are in the corporate limits of * * * any city, * * * the board of county commissioners must before publishing the report of the engineer and viewers, obtain of the common council of said city * * * their consent to said improvement in said town, and said consent shall be shown by a copy of the record of the meeting of said trustees, either in regular or special session, *ordering* that said improvement be made." Acts 1899, p. 164, §2. The provision amounts to this: that when commissioners have exhibited to the common council the precise plans and specifications of a proposed improvement, if the council withholds its approval, that is the end of the matter. The commissioners have no power to proceed further. But if the city is satisfied with the plan, and desires the improvement made as proposed, it seems not sufficient for the council passively to consent, but it must act affirmatively and officially in legal session, and enter upon its minutes an order that the improvement be made. Such an order, made upon full knowledge of the plans and specifications proposed, is equivalent to making the improvement the city's own, and if the work under such an order is executed according to

the exhibited plans and profile, it imposes upon the city the same liabilities as if the improvement had been accomplished upon its own initiative; or, in other words, the entry of the order by the city council that the improvement be made had the effect of constituting the board of commissioners the agent of the city in the improvement of that part of the highway within the city limits. It follows, therefore, that the city can find no escape from liability in the fact that the improvement of Campbell street was effected under the immediate supervision of the county commissioners. If that improvement was faulty, and the plaintiff was damaged by reason of the fault, the city must answer.

(2). We now come to the real question for decision: Is appellant liable for damages for so improving Campbell street as to cause surface-water to be diverted from its natural and usual flowage, to collect in large quantity in side ditches and to be discharged in a body upon an abutter's premises, where it was not accustomed or natural for it to go, without providing any way for its escape therefrom?

The common councils of cities in this State have absolute dominion over the streets and other highways of the city. §3623 Burns 1901, Acts 1891, p. 122. The city holds such highways in trust for the public, and is in duty bound to improve them in such manner as will respond to the necessity and convenience of the public in their use as ways of passage. To promote these objects, the city, in the improvement of a street, has the right to make cuts in front of some abutters' property and fills in front of others in producing a proper and common grade. Property may be thus injured by being made less valuable, but if the work has been done skilfully and without negligence, the injury will be considered as direct and consequential, and such as the abutter was bound to know, when he made his purchase, was liable

to happen in the rightful exercise of municipal power. For such injuries, it is well settled, cities are not liable. *City of Evansville* v. *Decker* (1882), 84 Ind. 325, 328, 43 Am. Rep. 86, and cases cited.

A city may also construct side ditches in cuttings to draw the water off the crown of the roadway, and it is not liable if the water discharged by such ditches finds its way onto private property lying lower than the street.

4.

In short, it may be said that a city is not liable in damages for any injury resulting to abutting property which is directly and necessarily incident to a proper and skilful construction of a street improvement. *City of North Vernon* v. *Voegler* (1885), 103 Ind. 314, 317, and cases cited.

But it has been the rule of decision in this court for more than twenty-five years that a municipal corporation has no right to collect surface-water in an artificial chan-

5. nel, and cast it upon another's land without providing adequate means for its escape. *Weis* v. *City of Madison* (1881), 75 Ind. 241, 248, 39 Am. Rep. 135; *City of Evansville* v. *Decker* (1882), 84 Ind. 325, 328, 43 Am. Rep. 86; *City of North Vernon* v. *Voegler* (1883), 89 Ind. 77; *City of Crawfordsville* v. *Bond* (1884), 96 Ind. 236, 242; *Davis* v. *City of Crawfordsville* (1889), 119 Ind. 1, 12 Am. St. 361; *Patoka Tp.* v. *Hopkins* (1892), 131 Ind. 142, 31 Am. St. 417; *Mitchell* v. *Bain* (1895), 142 Ind. 604, 618. For an instructive case, where many decisions are reviewed by Cooley, J., see *Ashley* v. *City of Port Huron* (1877), 35 Mich. 296, 24 Am. Rep. 552.

There is evidence to the effect that, before Campbell street was improved, the principal part of the storm water complained of, falling on from eight to ten acres lying east of Campbell street, meandered along natural depressions to the south and west, and crossed Campbell street through two culverts, about thirty and forty rods, respectively,

north of Pearl street, which former road or street officers had deemed necessary to construct. In making the improvement, these culverts were removed, the watercourses filled with earth to the fixed grade, and a side ditch constructed on the east side of the street sufficient to carry all the surface-water discharged into it from the east between the Grand Trunk railroad and Pearl street, a distance of about eighty rods, and near the latter point permitted to flow out upon abutting property and in upon the plaintiff's lot, which after the improvement was completed lay lower than the street, without making any provision for its escape. No one will question the right of a city to divert surface-water from natural courses in carrying out a system of municipal drainage, but when it collects such water in large quantity in an artificial channel, thereby creating a necessity for a new and larger outlet, it is its plain duty to provide it. The duty of supplying an adequate outlet is inseparable from the right to collect the water. To permit the assembled waters to descend in a body through such artificial channel to the premises of abutters made lower than the street by the improvement is as much an invasion of private right, as much a trespass upon private property, as would be the wasting of earth and stone from the cuttings upon the adjacent lots. We think, therefore, that under the complaint and evidence the jury had abundant grounds for finding that the improvement of Campbell street was unskilfully and negligently accomplished, in that it caused the assembling of a large and an unusual amount of storm water near the intersection of Pearl street, and provided no means for it to get away. Both the complaint and evidence are sufficient.

(3) Appellant's fourth paragraph of answer was to the effect that the damages for which the plaintiff sues were caused by an unprecedented rain-storm and flood, which, in contemplation of law, was the act of God. The sustaining of a demurrer to the answer is as-

signed as error. What has been said above with respect to the duty of municipalities to provide means of escape for surface-water in the improvement of its streets does not apply to unprecedented rainfalls; that is to such downpours or floods as may be known to have occurred, but are so unusual and extraordinary as that prudent persons do not think of attempting to guard against them. Skilful construction of streets in this respect seems to mean that such side ditches, culverts, and outlets, must be provided for surface-water collected and diverted from natural ways as are sufficient to carry the waters that may, from experience and the previous history of the vicinity, be reasonably expected to fall, and which are not the result of a cloudburst or other rain-storm of extraordinary character. *City of Madison* v. *Ross* (1851), 3 Ind. 236, 54 Am. Dec. 481; *City of Evansville* v. *Decker, supra; Los Angeles, etc., Assn* v. *City of Los Angeles* (1894), 103 Cal. 461, 37 Pac. 375; *Allen* v. *City of Chippewa Falls* (1881), 52 Wis. 430, 9 N. W. 284, 38 Am. Rep. 748; *City of Peoria* v. *Adams* (1877), 72 Ill. App. 662; 1 Farnham, Waters and Water Rights, p. 362.

Therefore, if the plaintiff's damages were caused by water cast upon her property by an unprecedented and extraordinary rain-storm or freshet, the city was

7. not liable, and the fourth paragraph of answer stated a good defense. The complaint, however, rests upon the theory that the surface-water from ordinary rains was collected, diverted, carried to, and, for want of an outlet, cast upon, and left on, the plaintiff's lot, to her injury. If her damage did not result as alleged in the complaint, the city's answer of general denial put in issue every fact that went to disprove it. Hence it is that all the evidence that would have been admissible under the fourth paragraph of answer was admissible under the general denial, and the error in sustaining appellee's demurrer thereto was harmless.

But this does not settle the question. On the trial, at the proper time, and while the city's witness was testifying in chief, appellant, upon appellee's objection, was denied the right to prove, as it offered to do, and was entitled to do, that the damages sued for were caused by water from an unprecedented rain overflowing the plaintiff's premises. This was prejudicial error. The case is not one of contract, where the court may sometimes look into the evidence to determine whether the complaining party has suffered from an exclusion of his evidence; but it sounds in tort, and in all such cases the damages are unliquidated, and the amount left to the jury, to be ascertained by them, under the direction of the court, from a consideration of all the evidence.

It is plain that we can not say that the verdict would have been the same if the court had permitted appellant to prove that the rain which injured the appellee was of a character for which the city was not liable. For this error the cause must be reversed. The judgment is reversed, and cause remanded, with instructions to grant appellant a new trial.

## MANDATE MODIFIED.

Upon appellant's petition and proper showing that appellee, Wilhelmina Spaeth, departed this life on or about November 11, 1904, being after this appeal and before judgment of reversal herein, and the death of said Wilhelmina Spaeth now appearing to this court for the first time, it is now ordered that the judgment of reversal rendered in this cause on December 12, 1905, be set aside, and the same reëntered as of the date of submission of said cause, to wit, February 13, 1904.