EQUITABLE LIFE INSURANCE COMPANY OF IOWA *v.* HORNER ET AL.

[No. 14,462. Filed September 29, 1932. Rehearing denied February 2, 1933. Transfer denied July 29, 1933.]

*Harlan & Brown* and *Phineas M. Henry,* for appellant.

*Fred B. Pickett,* for appellee.

KIME, P. J.—This was a suit by appellee to recover on a life insurance policy issued by appellant to the deceased son of appellees on October 20, 1925, wherein the appellees were beneficiaries. The amount alleged to be due was the face value of the policy, $1,000.00 plus interest. Payment of premium for four years was alleged, as was the lapse or default on October 30, 1929, for non-payment of premium and the death of the insured on September 7, 1930.

The appellant demurred for want of facts. This was overruled; then followed a refusal to plead further and a finding and judgment for appellees.

The error relied upon for reversal is the overruling of the demurrer.

The question presented is whether or not there should have been granted automatically upon the default ■ extended term insurance under the provisions of section 9036, Burns Ann. Ind. Stat. 1926, being the Acts of 1909, ch. 95, sec. 5, cl. 10.

Section 5 of this act is as follows:

"From and after July 1, 1909, no policy of life insurance shall be issued or delivered in this state by a life insurance company organized under the

laws of this state, unless the same shall provide the following:

Clause 10 is as follows:

"That in the event of the default of premium payment after premiums have been paid for not less than three years, the *insured shall be entitled to the extended insurance shown in the table of values and options* for the end of the last year for which full annual premiums shall have been paid: *PROVIDED,* That any unpaid note given for premiums and any existing indebtedness to the company on account of or secured by the policy shall reduce the amount or term of such *extended insurance* in the ratio of such indebtedness to the net value of such *extended insurance:* and, *PROVIDED,* That the policy may be surrendered to the company at its home office within one month from the date of default for a specified cash value at least equal to the sum which would otherwise be available for the purchase of *extended insurance as aforesaid:* and, *PROVIDED, FURTHER,* That the company may defer payment for not more than six months after the application therefor is made. This provision shall not be required in term insurance of twenty years or less."

The policy in question contained the following provisions:

"If, after the payment of premiums for three full years or more, default is made in the payment of a subsequent premium, this policy shall, upon such default, without action on the part of the insured, continue as paid-up non-participating insurance of a reduced amount payable at the same time and under the same conditions as this policy; or

EXTENDED TERM INSURANCE.

"Upon written application of the insured and assignee, if any, and the presentation of this policy at the Home Office for endorsement, within three months after the date of such default, the Company will continue the face amount of this policy and any outstanding paid-up additions thereto, less any indebtedness hereon to the Company, as non-participating extended term, insurance without the...

right to loans, counting from the due date of the premium in default. The extended term insurance as defined in (b) above, may be made the automatic non-forfeiture option by endorsement hereon pursuant to a written request of the insured and assignee, if any, filed at the Home Office of the Company while no premium is in default.

"The amount of the automatic paid-up insurance under provision (a) or the term of the extended insurance under provision (b) shall be such as the cash value of this policy and of any existing paid-up additions less any indebtedness hereon to the Company will purchase as a net single premium on the basis of the American Experience Table of Mortality with interest at the rate of $3\frac{1}{2}\%$ per annum."

The appellant contends that this is a substantial compliance with the statute and that all the insured had was a right to demand or claim extended insurance. Appellant further contends in effect that "entitled" means "is available." In other words the insurance is available to the insured if he complies with other provisions of the policy.

The first paragraph of Section 4 of the Act of 1909 gives the necessary explanation of the difference in the meaning of "entitled" and "avail." This paragraph says certain "insurance companies may reincorporate and avail themselves of the provisions of this act by complying with conditions." This is the interpretation appellant seeks to put upon the word entitled. They say that the insured may avail himself of extended insurance by complying with conditions they lay down.

The appellees contended below that the statute in question makes the extended insurance provision automatic in case of default and the lower court sustained that contention. This in effect gives to the word "entitled" the meaning of "having title to."

Analyzing the statute we find it says, "no policy of life insurance shall be issued or delivered . . . unless

the same *shall provide* the following: . . . That in the event of the default of premium payment after premiums have been paid for less than three years, the insured shall be entitled to the extended insurance shown in the table of values and options, etc."

Thus we conclude that the legislature intended that the insured should be entitled to something. The next inquiry is, what is he entitled to? The appellant says he is entitled to an option—the appellees say he is entitled to extended insurance. The appellant says he has something if he wants it—the appellees, that he has something whether he wants it or not.

When is the insured entitled to anything is a question presenting itself. The statute says "in the event of default after three years' payments." The appellant says the insured is entitled to it after he has complied with conditions prescribed by them. This last does not seem logical.

A further provision in the clause of the statute in question sheds some light upon the intention of the legislature. It provides that within one month after default of premium the policy may be surrendered for a cash value "at least equal to the sum which would be available for the purchase of extended insurance *as aforesaid.*" As aforesaid where? In the preceding phrases of that section where they said that the insured should be entitled to extended insurance. Nothing was said before about paid-up or cash surrender options.

Thus it seems clear that the legislature intended and we here hold that "entitled" as here used, means, have an absolute right to the amount of extended insurance set out in the tables.

It was not intended to mean that the insured could have this or could have something else. The statute recognized that after premiums had been paid for a certain period there was an equity established in favor

of the insured. Thus they provided that the insured should have extended insurance for that equity. They did not say that the insured be given the option of electing what he would take. The statute did not say that the insured may be entitled; it said, "the insured *shall* be entitled." This means that the insurer is liable for extended insurance without any act upon the part of either.

This does not preclude the insurer and insured from contracting further. If they want to contract for options beyond the statute they may but the proviso of the statute is for the protection of the insured in case nothing is said about the equity due the insured at the time of the default.

While it is not important why the legislature formulated the law in the manner that it did it is nevertheless interesting to note that insurance companies might carry paid-up policies much longer without accounting for the money they were carrying than they could with extended insurance. This may or may not have influenced the legislature in making extended insurance the automatic feature.

In connection with the law that requires insurance policies to be construed liberally in favor of the insured it appears from the complaint and policy exhibit that the insured was only *fifteen years of age* at the time this policy was written. It would no doubt be interesting to know what conception he had of extended paid-up or cash surrender values or options. Probably the legislature knew policies were issued to children of tender years when they made the extended insurance feature automatic, so that they would have something whether they elected or not.

Many definitions of "entitled" were cited but we found none that were of any particular value. All may be found in any good work and a comparison or an

attempt at distinguishing would serve no useful purpose. Here the intent of the legislature in this particular statute is all that need be decided. Entitled has many meanings other than the one used here and it can not be said to have the same meaning universally.

Appellant further contends that the statute is directory only, while the appellees contend that it is ■ mandatory and is a part of every contract of insurance whether incorporated therein or not.

Must the beneficiaries suffer because a large corporation dealing with a fifteen-year-old boy has omitted a provision that the statute says must be contained in the policy, or because they have made it an optional feature?

There is no penalty for failure to incorporate the statutory provisions as is found in some states. Our statute says, "no policy of life insurance shall be issued or delivered in this state . . . unless the same shall provide the following . . . extended insurance shown in the tables."

Our holding under such language is that this provision is a part of the contract. *Hollin* v. *Essex, etc.* (1915), 88 N. J. Law 204, 96 Atl. 71; *N. Y. Life Insurance Co.* v. *Cravens* (1900), 178 U. S. 389, 20 S. Ct. 962, 44 L. Ed. 1116.

Our conclusion is that the trial court did not err in overruling the demurrer and the judgment is affirmed with 10 per cent penalty.