## FEDERAL LIFE INSURANCE CO. *v.* RELIAS.

[No. 14,345. Filed April 20, 1933. Rehearing denied November 29, 1933. Transfer denied June 22, 1934.]

116

*Parker, Crabill, Crumpacker & May, Woodson S. Carlisle,* and *George N. Beamer,* for appellant.

*W. A. Slick,* for appellee.

CURTIS, C. J.—This was an action on a life insurance policy on the life of one Phoebe Jane Schroeder, brought by the appellee, her sister, who was the beneficiary therein, against the appellant insurance company, who issued the policy. The policy was dated January 9, 1930. There was a written application for the policy which was dated December 22, 1929.

The policy was executed without medical examination on the application. In the application the insured stated that she was in sound health; that she had had no illness within 10 years; that she never sought medical or surgical advice nor had she ever undergone any operation; that she never had cancer or tumor; that she never had any disease of the womb or ovaries and had never had a miscarriage. The application stated that the policy would not take effect unless delivered and received while the insured was in good health. The insured died April 24, 1930, of carcinoma (cancer) of the cervix of the uterus and compression of the ureters. The appellant tendered a return of the insurance premium and demanded a cancellation of the policy which was refused. This action then followed. There was an answer in three paragraphs: (1st) general denial; (2nd) fraud and bad health of appellee at the time of the application and when the policy was delivered; (3rd) a cross-complaint in equity to cancel the policy. The appellee replied in two paragraphs to the second paragraph of answer, the first being a general denial and the second relying upon waiver. She filed a demurrer to the third paragraph of answer or cross-complaint on the ground that the appellant had a legal remedy and

could not plead the equitable remedy of cancellation. This demurrer was sustained with an exception to the appellant. The cause was tried before a jury upon the complaint in one paragraph, the first and second paragraphs of answer, and the first and second paragraphs of reply.

The jury returned a general verdict in favor of the appellee in the sum of $2,500.00 and also answered certain interrogatories. The judgment was upon the general verdict and in accordance therewith. A motion for a new trial was seasonably filed and overruled with an exception to the appellant and this appeal prayed and perfected.

The errors relied upon for reversal are: "(1) The Court erred in sustaining the demurrer of the appellee to the cross-complaint of the appellant. (2) The Court erred in overruling the motion of the appellant for a new trial."

The motion for new trial contains 15 causes or grounds which may be summarized as follows: Verdict contrary to law and not sustained by sufficient evidence; error as to the admission and exclusion of certain evidence; error in the giving of each of instructions numbered 4, 5, 6, 7, 8, 9, 11, and 12 tendered by the appellee and in refusing to give each of instructions numbered 5 and 6 tendered by the appellant.

Under propositions, points, and authorities in the appellant's brief it has only discussed the ruling on the demurrer heretofore mentioned; that the verdict is contrary to law and is not sustained by sufficient evidence; the giving of each of the appellee's instructions numbered 4, 5, and 9 and the refusal to give the appellant's instruction numbered 6. All other alleged errors are therefore waived. We will consider the errors not waived in the order above mentioned.

Section 370, Burns 1926, §2-1015, Burns 1933, §119, Baldwin's 1934, among other things, provides that "The defendant may set forth in his answer as ■ many grounds of defense, counter-claim and set off, whether legal or equitable, as he shall have. Each shall be distinctly stated in a separate paragraph, and numbered, and clearly refer to the cause of action intended to be answered." The pleading referred to as the third paragraph of answer or counterclaim to which the demurrer was sustained in the instant case obviously sought to present a defense directly connected with the transaction upon which the appellee must rely in her cause of action. It sought to cancel the contract, for fraud, upon which she based her action to recover. It is such a pleading as is recognized by our statute, *supra,* and is within our code definition of a counter-claim and we shall so regard it. See *New York Life Insurance Company* v. *Adams* (1930), 202 Ind. 493, 176 N. E. 146. In the above case it was held that in a suit by the beneficiary, on a life policy, it was error for the court to strike out the insurer's so-called cross-complaint which was in fact a counterclaim to recind the policy for misrepresentations regarding the insured's health but that said error was harmless and not reversible where the defense of fraud was barred by the incontestable clause contained in the policy. In the instant case it is not claimed that the defense of fraud is barred by the incontestable clause in the policy.

In the case of *Ebner, Administrator* v. *Ohio State Life Insurance Company* (1918), 69 Ind. App. 32, 121 N. E. 315, the court said, "We conclude that under proper circumstances an insurance company, after the loss has occurred, may proceed by affirmative action to avoid the policy, provided it takes proper steps to that end within the period named in the uncontestability clause." In the case of *Indiana National Life Insurance Company* v.

*McGinnis* (1913), 180 Ind. 9, 101 N. E. 289, the court collected together a large number of authorities in this country supporting the almost universal rule that every defense to a policy of insurance embraced within the terms of the "incontestable clause" is completely barred and lost to the insurer if it fails to make the defense or fails to take affirmative action within the time limited in the policy. We cite the last mentioned case and the large number of authorities therein cited as showing that the insurance company may *make the defense or take affirmative* action within the time limited in the policy. In other words the insurance company may avail itself of its remedy either by *making such defense* or *taking affirmative action* within the time limited in the policy. This, of course, does not mean that the issue thus tendered by way of defense or by way of affirmative action must be determined within the time limited by the policy but means that such issue when tendered within such time may be determined by the court under its usual procedure. See *Ebner, Administrator* v. *Ohio, etc., Insurance Company, supra.*

Under the authorities we believe that the trial court erred in sustaining the demurrer to the said counterclaim, but was it such error as was harmful, requiring a reversal? We think not. An examination of the pleadings shows that the allegations of fraud in the appellant's second paragraph of answer and in its counterclaim are in legal effect identical. When the demurrer to the counterclaim was sustained the appellant had the right to amend, of which right it did not avail itself. The appellant has made no showing that any of its evidence as to the alleged fraud of the appellee was excluded by reason of the ruling on the demurrer. There were certain causes in the motion for a new trial that related to the admission and exclusion of evidence but these alleged errors were all waived

by the appellant's failure to present them under its propositions, points, and authorities in its brief.

We believe the law to be that ordinarily where as in the instant case the issues at law and in equity are identical and the law issue is tried, that there is no right to a re-trial of the equity issue. The litigant has had his remedy at law and equity will not interfere with the result, and this is especially true if the remedy at law is not inadequate. There is no showing in the instant case of any inadequacy of the remedy at law of the appellant. To sustain the position of the appellant would be to sanction a practice by which the plaintiff in every action upon an insurance policy may be deprived of his constitutional right to have his cause submitted to a jury. See *Northern Life Insurance Company* v. *Walker* (1923), 123 Wash. 203, 212 Pac. 277; *Bierman* v. *Guaranty Company* (1909), 142 Iowa 341, 120 N. W. 963; *New York Life Insurance Company* v. *McCarthy* (1927), 22 Fed. (2nd Ed.) 241; *Untermyer* v. *Bernhauer* (1887), 105 N. Y. 521, 11 N. E. 847, 21 C. J. 68.

The law is also well settled in this state that where a demurrer is erroneously sustained to a good paragraph of answer, but the same facts could as well be proven under another paragraph of answer, no injury results to the defendant and the ruling is harmless. It appears to us that the same facts concerning the alleged fraud of the appellee could as well have been proven under the first and second paragraphs of answer which were allowed to stand as under the counterclaim to which the demurrer was sustained and that therefore there was no reversible error in the ruling on the demurrer. See *Racer* v. *The State, for use of Rhine, Drainage Commissioner* (1891), 131 Ind. 393, 31 N. E. 81; *City of Valparaiso* v. *Spaeth* (1905), 166 Ind. 14, 76 N. E. 514, and the long line of unbroken authori-

ties following the above cases which we deem unnecessary to cite.

The appellant submitted to the jury 8 interrogatories which, together with the answers by the jury, are as follows:

"(1) Did the insured Phoebe Jane Schroeder, on or about the 22nd day of December, 1929, file with the defendant her written application for insurance?

Ans. Yes.

(2) If you answer the last foregoing interrogatory in the affirmative then was Phoebe Jane Schroeder afflicted with a cancer at the time she filed said application for insurance?

Ans. No.

(3) Did Phoebe Jane Schroeder die on the 24th day of April, 1930?

Ans. Yes.

(4) Was the cause of the death of Phoebe Jane Schroeder carcinoma of the cervical stump of the uterus, carcinomatous compression of the ureters with uremia?

Ans. Yes.

(5) Did the insured Phoebe Jane Schroeder, at the time of signing and filing her written application for insurance, mentioned in interrogatory numbered two, know that she was afflicted with a cancer?

Ans. No.

(6) . Did the insured Phoebe Jane Schroeder, at lease seven years before her death, undergo an operation in which her ovaries were removed?

Ans. Yes.

(7) After undergoing the operation mentioned in the last foregoing interrogatory, did Phoebe Jane Schroeder cease having menses?

Ans. No.

(8) For about ten months prior to her death, did Phoebe Jane Schroeder have a vaginal discharge that increased in amount up to the time of her death?

Ans. No."

These were returned along with the general verdict in favor of the appellee.

The answers to interrogatories one and two, if true, establish the fact that the insured did not have cancer on the date of her application for the insurance policy in controversy. The answer to interrogatory number five, if true, establishes the fact that she did not know that she was afflicted with cancer at the time of signing and filing the application for such insurance on the 22nd day of December, 1929. The answers to interrogatories six and seven, if true, establish the fact that the insured had an operation for the removal of her ovaries at least seven years before her death and that she did not cease having menses after the operation. The answer to interrogatory number eight, if true, establishes the fact that she had no vaginal discharge for at least ten months prior to her death. We have examined the evidence and in our opinion it sustains the jury in its said answers. From a reading of the record we cannot say that said answers are untrue. If those facts be treated as established facts then we must conclude that the insured did not have cancer at the time of her application and at the time of her receipt of the insurance policy. She died of cancer but if she became afflicted with it after the date of her said application and the receipt of her policy the fact that she died of cancer would certainly not avoid the policy. There was some conflict in the evidence as to her general health and as to whether or not she had been treated by a physician within the last ten years but these questions have been foreclosed by both the special and general verdict of the jury in favor of the appellee.

The said application contained the following question and answer: "Have you ever sought medical or

surgical advice, or undergone any operation? If so give details, including dates. No." The evidence is without conflict that she had had an operation for the removal of her ovaries. That operation, according to the evidence most favorable to the appellee, was performed some 15 to 17 years before the date of her application and left a scar on her abdomen. There was medical testimony by Dr. Farnham to the effect that an operation for the removal of the insured's ovaries ten years before her death probably had nothing to do with the cancer, if the insured died of cancer and that such removal has no effect on the duration of life. The evidence also discloses that the insured in 1928 obtained a policy of insurance from the appellant and while the evidence isn't completely convincing yet the jury could fairly infer from the evidence that such policy was issued after a medical examination. The said application contained the following provision: "I agree and declare that all the statements, questions and answers contained and set out in this application are and shall be treated as material to the risk and shall form part of the policy contract issued to me by the company and that the whole truth of such statements and answers is the basis of and part of the consideration for such insurance on my life, which if granted, is conditional on there having been no intentional or fraudulent misrepresentation or suppression of fact by me." The policy in the instant case contained the following: "The statements of the Insured, in the absence of fraud, shall be deemed representations and not warranties, and no such statements shall void the contract unless contained in said application."

The general rule is that the construction of written contracts is for the court and not for the jury. But it has been repeatedly held in this state that where answers made by the insured in his application for insurance can be construed as representa-

tions merely, they need only be substantially true insofar as they are material to the risk. See *Catholic Order of Foresters* v. *Collins* (1912), 51 Ind. App. 285, 99 N. E. 745; *Prudential Life Insurance Company* v. *Sellers* (1913), 54 Ind. App. 326, 102 N. E. 894; *Merchants, etc., Insurance Company* v. *Richardson* (1917), 66 Ind. App. 567, 118 N. E. 576; *Mutual Life Insurance Company of New York* v. *Hoffman* (1921), 77 Ind. App. 209, 133 N. E. 405, and the numerous cases cited in the above cases. But if the answers of the insured must be construed as warranties then they must be true whether or not they are material to the risk. See *Catholic Order of Foresters* v. *Collins, supra,* and the cases cited therein.

In 1909 our legislature provided as follows: "From and after July 1, 1909, no policy of life insurance shall be issued or delivered in this state or be issued by a life insurance company organized under the laws of this state, unless the same shall provide the following: . . . that all statements made by the insured in the application shall, in the absence of fraud, be deemed representations and not warranties, . . ." See Acts 1909, p. 251; Sec. 9036, Burns 1926. This provision, even if it should be omitted from a policy, would still be a part thereof by virtue of the statute. See *Equitable Life Insurance Company of Iowa* v. *Horner et al.* (1933), 97 Ind. App. 347, 182 N. E. 463. Of course, cases arising under policies issued or delivered before July 1, 1909, are not controlling on matters covered by the Act of 1909, supra.

In the absence of fraud in the instant case the statements of the insured in the application are therefore to be construed as representations and not as warranties. The burden of showing fraud on the part of the insured was upon the appellant. The jury, under the issues, were the sole judges of the facts that would constitute fraud of the insured and they were

also the sole judges as to whether or not the representations made by the insured were representations material to the risk. By their general verdict for the appellee those issues were necessarily determined against the appellant and the verdict of the jury will not be disturbed by this court if there is any competent evidence or legitimate inferences to be drawn from said evidence to sustain it. We believe there was competent evidence to sustain the verdict. For us to disturb the verdict we would of necessity have to conclude, as a matter of law, that the insured was guilty of fraud in the matter of a representation or representations material to the risk. We do not reach that conclusion and in our opinion the verdict is sustained by sufficient evidence and is not contrary to law unless it may be said that it was improperly affected by an erroneous instruction or instructions or by the failure to give a necessary instruction.

Instruction No. 9 of the appellee, the giving of which is complained of by the appellant, and the appellant's instruction No. 6, which was refused, each were based upon an assumption that the insured had cancer at the time of the application for, and the delivery of the policy. The jury by its special verdict found that she did not have cancer at either of said times and it is difficult to see how the giving of the one instruction or the refusal to give the other would be reversible error available to the appellant.

What we have said heretofore in this opinion as to the issue of fraud and the burden of proof and as to the representations made by the insured in her application we believe fully covers the alleged error as to the appellee's instruction No. 4, which related to the same subject matter. We think there was no error in giving the instruction.

It is next urged that there is no evidence to which the appellee's instruction No. 5 could apply, and that it was

therefore error to give the same. In this contention the appellant is in error. There was evidence to the effect that the insured had a policy of insurance upon her life in the appellant company procured upon medical examination in 1928—about two years before the date when the policy in question was issued—and that at said time she had a scar upon her abdomen showing that she had had an operation. The instruction is to the effect that if the appellant knew of the falsity of the answer of the insured as to an operation at the time it issued the policy and did not tender back the premium within a reasonable time it would be bound by the policy. We think the instruction was correct and applicable to the evidence. Perchance the appellant chose to waive the objection it might have to issuing the policy even though the insured had had an operation.

We have discovered no reversible error. The judgment is affirmed.