## Metropolitan Life Insurance Company
### v. Alterovitz.

[No. 27,023.  Filed April 27, 1938.  Rehearing denied May 24, 1938.]

*Bomberger, Peters & Morthland,* and *Harry Cole Bates,* for appellant.

*McAleer, Dorsey, Clark & Travis,* and *Raymond B. Young,* for appellee.

HUGHES, J.—This is an action brought by the appellee against the appellant upon an insurance policy issued by the appellant to one Izadore Alterovitz on October 9, 1930, in which the appellee, widow of Izadore Alterovitz, was the beneficiary. The policy was for $10,000.00, and it, together with the application attached, was delivered to the said Alterovitz on October 17, 1930. On the 27th day of June, 1931, the said Izadore Alterovitz died. It is alleged in the complaint that on August 31, 1931, after the death of said Izadore Alterovitz, the appellee notified the appellant of the death of the said Alterovitz and made due proof thereof and demanded payment of the amount due under said policy of insurance, which demand was refused; that there is due and owing the appellee from the appellant the sum of $10,000.00 with interest from August 21, 1931, at 6% per annum. So much

of the policy of insurance as is necessary to present the question raised in this appeal is set out.

The appellant filed three paragraphs of answer, the first being a general denial, the second alleging fraud in the application and tendering the premiums paid, and the third paragraph charging misrepresentation in the application and election by the appellant to avoid the policy. The second paragraph of answer alleged that the policy of insurance was issued upon and in consideration of a written application made by the said Izadore Alterovitz; that certain questions appeared in said application and three are set out and these three questions and answers thereto present the main controversy in this case. The application contains two parts, A and B. Question five in part B is as follows: "Have you ever been an inmate of or have you ever received treatment at an asylum, hospital, sanatorium or cure? If yes, give date, duration, name of ailment and name of institution." To this question the applicant answered "No." Question No. 12 of part B is as follows: (g) "Have you consulted a physician for any ailment or disease not included in your above answers?" The applicant answered "No" to this question. Question 13 of part B is as follows: "What physician or physicians, if any, not named above, have you consulted or been treated by, within the last five years, and for what illness or ailment? If none, so state." The applicant answered "No" to this question.

It is further alleged that at the bottom of said application, part B, is the following: "I hereby certify that I have read the answers to the questions in part B hereof, before signing, and that they have been correctly written, as given by me, and that they are full, true and complete, and that there are no exceptions to any such answers other than as stated herein. Dated at Gary, Indiana, this 3 day of October, 1930. Witness to signa-

ture W. P. Alexander, M. D. Signature of applicant Izidore Alterovitz."

The appellant further alleged that the policy was issued upon the representations set out in the application without knowing they were false and if it had known they were false answers it would not have issued the policy; that all of said answers were false and fraudulent and made with intent to deceive the appellant; that from September 4, 1929, until and long after the date of the application the said applicant was under the care and treatment of one Dr. Bills of Gary, and that within a year prior to the date of said application the applicant had been under the care of Dr. Kan of Gary; that during said period from September 4, 1929, to and subsequent to the date of said application, said applicant had been treated in a hospital in Gary and various examinations and diagnoses were made of his condition; that he was found to be suffering from a large aneurysm; that he had been treated for such aneurysm periodically during at least a year prior to the date of the application and that he died on June 27, 1931, from said aneurysm.

The same facts were stated in the third paragraph of answer. The appellees filed three paragraphs of reply: the first being a general denial; the second paragraph alleged in substance that Dr. Alexander, the medical examiner of the appellant, wrote the answers to the questions, that the applicant did not read the questions or answers but affixed his signature to parts "A" and "B" without knowing what Dr. Alexander had written but relied upon the assumption that Dr. Alexander would insert true and correct answers, that as to question 5 he, the applicant, informed Dr. Alexander of the various hospitals he had been in but he, without the consent, knowledge, collusion or conspiracy of the applicant, wrongfully and falsely inserted the word "No."

It is further alleged as to question No. 12, the appli-

cant told Dr. Alexander that he was being treated for an ailment which manifested itself by a pain ih the chest and around the heart and that he also told him that he had consulted Drs. Bills and Kan but that Dr. Alexander inserted the answer "No"; that he also answered question 13 truthfully but that Dr. Alexander falsely and wrongfully inserted the answer "None" without the knowledge, consent or approval of the applicant; that the examiner did not read the certificate which the applicant signed and that he could read English only with difficulty; that the applicant stated the true facts and information concerning the answers to questions but the medical examiner inserted false and untrue answers, that the applicant relied upon the medical examiner to insert the correct answers as given by the applicant and that he never knew that said examiner inserted false and wrong answers.

It was the theory of the paragraphs of reply that the appellant had waived the conditions of the policy and was estopped from avoiding liability under the policy. There was a trial by jury and a verdict rendered in favor of appellee for the amount of the policy.

The error relied upon for reversal is that the court erred in overruling appellant's motion for a new trial in which appellant claims there was error in giving and refusing to give certain instructions; the admission of oral evidence in rebuttal and that the verdict is not sustained by sufficient evidence and is contrary to law.

The evidence in substance is as follows: Izadore Alterovitz was forty years old when he died; he had been in the mattress business, known as the Gary Sanitary Bedding and Mattress Company. Dr. Bills testified that he had treated Alterovitz for different things from September 4, 1929, to June 18, 1931. It is shown in evidence that the said Izadore Alterovitz had an insurance policy with the Missouri State Life Insurance Company at the time

of his death and that proof of death was made which showed that he died at the Edward Hines Hospital and the cause of death was aneurysm aortic with edema pulmonary as a contributing cause. It was further shown by the records of the Veterans' Bureau that the said Alterovitz was admitted to the Edward Hines Hospital on June 23, 1931, and died on June 27, 1931; the personal history, on his admittance, showed that he had been treated for rheumatism by a doctor in 1921; that he stated he had been having pains since 1929 and had treatment by a doctor; that his complaint was shortness of breath, pain in chest, shoulder, back and sides and had these pains since 1929; that the diagnosis made at the time of his death was aneurysm aortic and pulmonary edema. The proof of death shows that the cause was aneurysm aortic.

It was shown by medical experts that aortic aneurysm is an enlargement of the aorta vessel which leads from the left side of the heart and when there is an aneurysm there is a bulge in one shape or another in the wall of the vessel. It was further shown that where one had pains in and about the chest and a cough it would indicate an aneurysm of the aorta; that the most characteristic cause of a brassy cough is aneurysm. Ester Surif, a sister of the beneficiary, testified in rebuttal that she was present when the questions were asked by Dr. Alexander and answers made. This was more than five years after the examination was made. Her evidence was to the effect that the applicant told Dr. Alexander in response to questions that he, the applicant, was in the hospital during the time he was in the World War; that he said I have been to two physicians, Drs. Bills and Kan, on several occasions; that he had a cough and pain around his heart; that he had a cough right now and I have been to see Dr. Bills a few days ago and also Dr. Kan; that he said he had a pain around his heart but that Dr. Alexan-

der said it was not necessary to put that down; she stated that Alterovitz did not read the application. It was admitted that a copy of the application was attached to the policy when issued.

The evidence shows that Alterovitz had been in business in Gary for several years; that he conducted his business in the English language; that he did his own banking business and solicited orders and order books printed in the English language and there is no evidence to show that he was not acquainted with the use of the English language.

It is contended by the appellant that the court erred in permitting the witness, Ester Surif, to testify that the applicant made full disclosure of his physical condition and treatments by physicians in answering questions propounded to him by Dr. Alexander, the medical examiner; that when the insurance company complied with the statute in attaching a copy of the application to the policy, neither the insured nor his beneficiary can impeach the answers as they appeared in the copy of the application attached to the policy.

Before considering the legal questions involved in this case we deem it pertinent to quote from some of the provisions of the policy and the application.

The policy provides: "This policy is issued in consideration of the application therefor, copy of which application is attached hereto and made a part hereof . . ."

It further provides: "This policy and the application therefor constitute the entire contract between the parties . . ."

Part A of the application number 26 sub one provides: "That the foregoing statements and answers are correct and wholly true and together with the answers to questions on part B hereof they shall form the basis of the contract of insurance if one is issued."

Twenty-six sub division three provides: "That no state-

ment made to or by, and no knowledge on the part of any agent, medical examiner or any other person as to any facts pertaining to the applicant shall be considered as having been made to or brought to the knowledge of the company unless stated in either part A or B of this application."

In part D of the application it is stated and signed by the applicant as follows: "I hereby certify that I have read the answers to the questions in part A hereof and to the question in part B hereof before signing and that they have been correctly written as given by me and that they are full, true and complete and that there are no exceptions to any such answers other than as stated herein."

The following is also noted on the policy: "Please read your policy promptly upon its receipt."

The appellant relies to a great extent upon the case of *Minsker* v. *John Hancock Mutual Life Ins. Co.* (1930), 254 N. Y. 333, 173 N. E. 4, 81 A. L. R. 89, to sustain its contention. The Legislature of New York in 1906 passed an Act requiring the application for insurance to be made part of the policy. The above case was decided after the above act went into effect and it was stated in the opinion that (p. 336):

> "Prior to January 1, 1907, when section 58 of the Insurance Law (Consol. Laws, c. 28) became effective, the courts of this State had decided in numerous cases that if the medical examiner of a life insurance company was truthfully told, by the applicant for a policy, of facts which under the terms of a policy would make it void if not noted upon it, the company could not avail itself of the defense that such facts were not stated in the policy, the underlying principle being that it would be a fraud upon the insured to accept pay for a policy which the company through its agent knew was void when delivered. Such was the case of *Sternaman* v. *Metropolitan Life Ins. Co.*, 170 N. Y. 13, 62 N. E. 763, 57 L. R. A. 318, 88 Am. St. Rep. 625. The Federal Supreme Court adopted a different view, and held that a void

policy could not be made valid by parol testimony to the effect that the company's agent had knowledge of the true facts and that the answers as written in the application were incorrectly written by the company's agent. *Northern Assurance Co.* v. *Grand View Building Assn.*, 183 U. S. 308, 22 S. Ct. 133, 46 L. Ed. 213. (P. 337.)

. . . . .

"After the enactment of that statute, the case of *Sternaman* v. *Metropolitan Life Ins. Co., supra,* and others to the same effect, ceased to be authority upon the question in an action upon a life insurance policy issued by a 'life insurance corporation doing business within the state,' when a copy of the application was indorsed upon or attached to the policy. The statutory rule superseded the court-made rule. (P. 338.)

. . . . .

"When an insured receives a policy it is his duty to read it or have it read, and if an application incorporated therein does not contain correct answers to the questions asked by the medical examiner it is his duty to have it corrected. In such circumstances a recovery will not longer be permitted because the medical examiner incorrectly recorded the applicant's answers or because the insured was unable to read or neglected to read the policy."

And other New York cases were cited to the same effect.

The Legislature of Indiana in 1909 enacted a similar law to that of New York as follows: §39-801 (Cl. 3) Burns 1933, §9723 (Cl. 3) Baldwin's 1934:

(3) "That the policy, together with the application therefor, a copy of which application shall be attached to the policy and made a part thereof, shall constitute the entire contract between the parties and shall be incontestable after it shall have been placed in force during the lifetime of the insured for two (2) years from its date, except for nonpayment of premiums and except for violation of the conditions of the policy relating to naval and military service in time of war."

The appellant insists that the same construction be placed upon this act as was given by the court of New York upon the provisions of the New York law.

The Legislature certainly had some purpose in enacting the particular law when it said: "That the policy together with the application therefor, a copy of which application shall be attached to the policy and made a part thereof shall constitute the entire contract between the parties . . ."

Prior to the enactment it was not necessary to make the application a part of the policy, but it might be embodied therein by reference merely. When this was done the applicant had no opportunity to read over the application when the policy was returned to him to ascertain whether or not the answers were truthfully recorded therein, but now in every life insurance policy when returned to the insured the application is a part of the policy and he has an opportunity to examine and read the same, and, if there are any errors in the answers he may call the attention of the company to them and have them corrected. He may know all of its terms by reading it or having it read to him. He has two opportunities to read the application and to know if the answers are correctly written—(1) When it is made, and (2) when it is returned with the policy.

There is utter confusion in the different jurisdictions of this country as to how far an applicant is bound by his answers in an application for insurance. The cases cannot be reconciled on any reasonable basis. In this opinion we will endeavor to base it on what we consider to be sound reasoning as applied to the insurance contract involved, the same as any other contract. We do not believe there is any sound reason why it should not be so applied.

We note that it is stated in the policy that it was issued in consideration of the application therefor which

is made a part of the contract; that the policy and application constitute the entire contract. We further note that in the application it is stated that the statement and answers are correct and wholly true and that the applicant had read the answers to questions in part A and B of the application before signing and that they were correctly written as given by the applicant and were full, true and complete. And the sentence "Please read your policy promptly on its receipt" is also printed on the policy. It would seem that these statements are as definite as could be made. What effect must be given them? Is the applicant bound by his answers or may he under the facts in the case dispute them by parol evidence?

In the case of *Sun Fire Office* v. *Wich* (1895), 6 Colo. App. 103, 39 Pac. 587, it is said (p. 113): "There is no reason, in contracts of insurance, that a party should be, by law, relieved from the duty of exercising the same ordinary care and prudence that is required in every other business transaction. It is the duty of every man to read what he signs. His failure to do so will or should not relieve him or allow him to avoid the contract." This seems to us to be a sound statement of law and especially in view of the fact that in the instant case the appellee under his own signature stated that the answers to the questions in the application were correctly written as given by the applicant and were full, true and complete. It is at once apparent that in any ordinary contract the appellee would be bound by such a statement and we see no sound reason why the same rule should not apply in the instant case although it is a contract of insurance.

The case of *Ryan* v. *World Mutual Life Insurance Company* (1874), 41 Conn. 168, is a well reasoned one and is quoted with approval in the case of *New York Life Insurance Company* v. *Fletcher* (1886), 117 U. S. 519. The case in some respects is similar to the instant

case. The beneficiary having died, action was brought upon the policy by his widow and on the trial she offered to prove that the agent wrote wrong answers to the questions in the application without the knowledge or consent of either the insured or the beneficiary. The application was signed without reading. The court said (p. 533) : " 'When an agent is apparently acting for his principal, but is really acting for himself or third persons, and against his principal, there is no agency in respect to that transaction, at least as between the agent himself, or the person for whom he is really acting, and the principal. . . . The fraud could not be perpetrated by the agent alone. The aid of the plaintiff or the insured, either as an accomplice or as an instrument was essential. If she was an accomplice, then she participated in the fraud. . . . If she was an instrument she was so because of her own negligence, and that is equally a bar to her right to recover. She says that she and her husband signed the application without reading it and without its being read to them. That of itself was inexcusable negligence. The application contained her agreements and representations in an important contract. When she signed it she was bound to know what she signed. The law requires that the insured shall not only, in good faith, answer all the interrogatories correctly, but shall use reasonable diligence to see that the answers are correctly written. It is for his interest to do so, and the insurer has the right to presume that he will do it. He has it in his power to prevent this species of fraud and the insurer has not.' "

Again in the case of *Rinker* v. *Aetna Life Insurance Company* (1906), 214 Penn. 608, 64 Atl. 82, 112 Am. St. Rep. 773, we find the following rule laid down (p. 612) : "In the case at bar when the agent was taking the application of the assured and was explaining the questions and the meanings of the terms used, he was very

-properly to be regarded, for those purposes, as the representative of the company; but if the evidence offered by the plaintiff is true, the agent must have attempted to commit a deliberate fraud upon the company. He knew that if the correct answers were given to the questions, the applicant would not be considered a fit subject for insurance, and no policy would be issued. It was his duty not only to write down truly the answers given by the applicant, but also to make known to his principal any other facts material to the risk which might come to his knowledge. Therefore, if he was guilty of any such conduct as the offer of the plaintiff would tend to prove, he grossly violated his duty, and the effect of his action was to benefit the applicant at the expense of the company. But in perpetrating such a fraud, the agent would not be alone. The signing of the application made the assured a party to it, and when she signed it, she was bound to know what she was doing. Good faith required of her correct answers to the questions and reasonable diligence to see that the answers were correctly written. If it be assumed that the answers were falsified, as alleged, that fact would at once appear, when the policy was delivered to her, by the copy of the application attached to it. Inspection would have shown that a fraud had been committed, both upon her and the company, and it would have been her plain duty to make the fact known to the company. She had it within her power to prevent the fraud, as knowledge of it was within her reach. Neither she nor her beneficiary can be permitted to take the fruits of the misrepresentation."

So in the instant case when the application and policy were returned to the insured he had an opportunity to read the answers to the application to ascertain whether or not they had been correctly recorded. He not only had the opportunity to do this but it was his duty to do so. This in our judgment was one of

the objects in view when the legislature enacted the statute heretofore set out requiring the application to be made a part of the policy.

In the case of *Southern Surety Company of New York* v. *Fortson* (1931), 44 Ga. App. 329, 161 S. E. 679, it is said (p. 339) : "Where, in conformity with section 2471 of the civil code of 1910, an application for insurance is actually attached to the policy of insurance, and by the terms of the contract is made a part thereof, any misrepresentation of material facts. made by the agent of the insurer in the application, will be imputed to the insured, and he will not be allowed to claim under the contract without being held to have had knowledge of the false statements made in the application 'actually attached to and forming an integral part of the contract as delivered, accepted and sued on.' "

It is here seen that the civil code of Georgia requires that the application be attached to the policy of insurance the same as in this state. In the case of *Modern Woodmen* v. *Angle* (1907), 127 Mo. App. 94, 104 S. W. 297, it is said (p. 115) : "Now whatever may be said with respect to the physician's failure to read the questions to him, we find Mr. Angle, on September 22nd, affixing his signature to and accepting the certificate, which in plain terms refers to the application and medical examination, a copy of which is then attached thereto, for the warranties of fact, as a basis upon which the insurance was made, and accepting it, too, upon a condition precedent that such warranties are true, and this certificate, with the false and untrue answers in the application annexed thereto, he retained in his possession for many months. Now it is well established in the law of insurance that, when the agent has written down untrue answers to such questions, even though it be done without the knowledge of the insured, and the insured is furnished a copy of the application containing

such untrue answers annexed to the policy, he is afterwards estopped from denying knowledge thereof. The doctrine, of course, proceeds upon the theory that it is the duty of the insured to use reasonable diligence in discovering the contents of the contract, and it is said, upon discovering the same, it becomes his duty to notify the company of such fraud perpetrated upon both himself and the insurer."

In the case of *New York Life Insurance Company* v. *McMaster* (1889), 87 Fed. 63, in speaking of insurance contracts the court said (p. 67) : "It was his duty to read and know the contents of the policies when he accepted them. It is true that the evidence is that he did not read them, but the legal effect of his acceptance is the same as if he had read them. He had the opportunity to read and to learn their contents, and, if he did not, it was his own gross negligence, and no act of the insurance company or its agent that concealed them and misled him as to their effect. . . . Neither the company nor its agent, therefore, made any representation or promise, or used any artifice or deceit, to prevent the insured from learning the terms of his policies. Their contents were not concealed. They were not misrepresented. The deceased must accordingly be conclusively presumed to have known their terms when he accepted them. If one can read his contract, his failure to do so is such gross negligence that it conclusively estops him from denying knowledge of its contents, unless he was dissuaded from reading it by some trick, artifice, or fraud of the other party to the agreement."

In the case of *Greber* v. *Equitable Life Assurance Soc. of United States* (1934), 43 Ariz. 1, 28 Pac. (2nd) 817, we find that the state of Arizona has a statute similar to the one in this state in which the statements to the medical examiner was pursuant to the code of 1928 attached to the policy before it was delivered and the

Arizona court said (p. 11): "Appellant's counsel propounded to him an interrogatory intended to elicit an answer that would have substantiated the allegation of his reply that he, not being familiar with the English language, did not understand the meaning of the following question of the medical examiner, and, particularly, of the word 'declined,' when he answered it 'no': 'Has your application for life insurance ever been declined, postponed or limited to a policy different from the one applied for?' The court sustained an objection to the interrogatory and its action in doing so is assigned as error. The ruling was correct, for the effect of the answer, so far as appellee was concerned, was the same whether appellant understood the question or not. It was his duty to give the insurer through the medical examiner the correct information as to his previous rejection to guide it in passing on his applications and, if he did not know the meaning of the question he should have had someone explain it to him before replying to it orally or attaching his name to the report of the doctor which included both it and the answer. Having led appellee to act upon the theory that the answer was correct, whether through a misunderstanding of the question or intention to mislead, appellant was estopped from thereafter asserting anything that would have changed the effect of that reply. In addition, an exact copy of the answers he had made in his application, Part 2, Statements to Medical Examiner, was, pursuant to section 1847, sub sec. 3, Rev. Code 1928, attached to the policy before it was delivered, and a reading of it when he received it would have disclosed to him that he had answered the physician incorrectly relative to a previous rejection and have led, if it had been done inadvertently, to a correction of it."

We also find in the case of *Lumber Underwriters* v. *Rife* (1915), 237 U. S. 605, 606, 607, 35 S. Ct. 717, 59 L.

Ed. 1140, the following language by Mr. Justice Holmes: "When a policy of insurance is issued, the import of the transaction, as everyone understands, is that the document embodies the contract. It is the dominant, as it purports to be the only and entire, expression of the parties' intent. In the present case this fact was put in words by the proviso for the endorsement of any change of terms. Therefore when, by its written stipulation, the document gave notice that a certain term was insisted upon, it would be contrary to the fundamental theory of the legal relations established to allow parol proof that at the very moment when the policy was delivered that term was waived. It is the established doctrine of this court that such proof cannot be received. . . . There is no hardship in this rule. No rational theory of contract can be made that does not hold the assured to know the contents of the instrument to which he seeks to hold the other party . . ." "What he cannot do is to take the policy without reading it, and then, when he comes to sue at law upon the instrument, ask to have it enforced otherwise than according to its terms. The court is not at liberty to introduce a short cut to reformation by letting the jury strike out a clause."

And the very recent case of *Adamos* v. *New York Life Ins. Co.* (1937), 22 Fed. Supp. 162, 166, it is said: "The courts generally hold that by signing an instrument, such as an application for insurance, the signer binds himself and those claiming through him to the instrument as signed. . . .

"The answers which are set out in the medical examination blank and signed by Adamos constituted a part of the policies sued upon. He could not hold the policies without becoming chargeable with knowledge of their contents. By accepting and retaining the policies, he must be held to have adopted as his own, the answers contained in the application attached to the policy, even

though they may have been erroneously entered." Many more cases of like import might be cited in addition to the foregoing. We refer the reader to 81 A. L. R. 829, p. 867, where a large number of cases are collected.

In the instant case the insured Alterovitz held the policy and application for more than eight months before he died; he was chargeable with their contents and must be held to have adopted as his own the answers contained in the application attached to the policy.

In view of the foregoing declarations of the law relative to insurance contracts, we are of the opinion that an insurance contract is controlled by the same law as any other contract and that there never has been any sound reason why such a contract should be looked upon in other light. We believe that the legislature had a purpose in view when it said: "That the policy, together with the application therefor, a copy of which shall be attached to the policy and made a part thereof. . . ." It had the power and right to pass such legislation and we can conceive of no other reason than to conclude that it was passed for the good of both the insurer and the insured. It protects the insured by giving him the opportunity of examining the application when it is returned to ascertain if his answers were correctly written pursuant to the answers made by him, and if not, to notify the company and have them corrected. It protects the company from paying unjust and fraudulent claims, and at the same time it protects honest policy holders from paying increased premiums on account of payments to dishonest and fraudulent policy holders. It places insurance contracts on the same basis as other contracts and we have failed to find any well reasoned opinion of any court to place such contracts on any other basis.

We are mindful of the fact that there are opinions of

this court long prior to the adoption of the law of 1909 which seem to be contrary to this opinion. We refer especially to cases of *Michigan Mutual Life Insurance Co.* v. *Leon* (1894), 138 Ind. 636, 37 N. E. 584, and *Germania Life Insurance Co. of New York* v. *Lunkenheimer* (1891), 127 Ind. 536, 26 N. E. 1082. Conceding the law announced in these opinions, and others of this court of like import, were correct in principle, they are no longer controlling in view of the Act of 1909, *supra*.

The appellee relies strongly upon the case of *Stenger* v. *Metropolitan Life Ins. Co.* (1922), 77 Ind. App. 523, 123 N. E. 418, to sustain her contention. It is true that this case was decided after the law of 1909 went into effect and the reasoning in that case lends strength to the appellee's contention. As a matter of fact, however, the precise question in the instant case was not discussed or passed upon, nor was the Act of 1909 even mentioned. If the case is deemed to be in conflict with this opinion the same is overruled.

The appellee also relies upon and cites the case of *Federal Life Ins. Co.* v. *Relias* (1934), 99 Ind. App. 115, 185 N. E. 319. The question involved in the instant case was not presented in the Relias case. The Act of 1909 was referred to but not as to anything applicable in the instant case. It is said, however, in discussing the Act by the court (p. 125): "Of course, cases arise under policies issued or delivered before July 1, 1909, are not controlling on matters covered by the Act of 1909." Therefore, the case is really against the contention of the appellee here.

It may be that cases will arise with peculiar circumstances in which the foregoing rule of law would not be applicable but there are no such circumstances in the instant case. On this phase of the case we are of the opinion that the court erred in permitting the witness, Ester Surif, to give parol evidence

impeaching the answers contained in the application. The appellant complains of instructions 8, 9, 10, 11, 13, and 14 given to the jury on the theory that they presented two conflicting theories as to the effect ▮▮ of the agent's knowledge and the statutory requirements to attach a copy of the application to the policy. We think the objection is well taken. Instructions numbers 8, 9, 10, and 11 clearly follow the Minsker case and what we have said in this opinion. Instructions number 13 and 14 are directly opposed to instructions 8, 9, 10, and 11. The instructions were in conflict, misleading and confusing. All of these instructions should not have been given. *Redmen's Ass'n* v. *Rippey* (1914), 181 Ind. 454, 103 N. E. 345, 104 N. E. 641; *Logan* v. *Logan* (1933), 97 Ind. App. 209, 180 N. E. 32. According to this opinion, instructions 13 and 14 are erroneous. "If two or more instructions are inconsistent and calculated to mislead the jury or leave them in doubt as to the law, it is a cause for reversal." *Wenning et al.* v. *Teeple et al.* (1896), 144 Ind. 189, 195, 41 N. E. 600. And erroneous instructions cannot be cured or corrected by giving one which is contradictory thereto. *Monongahela River Co.* v. *Hardsaw* (1907), 169 Ind. 147, 81 N. E. 492.

Complaint is also made in the giving of instruction number 3, especially of the following language: "And I charge you that the remarks of counsel during ▮ the course of trial have no evidentiary value, and that the arguments of counsel in discussing the testimony offered during the trial of the case are not evidence; and I charge you that such matters are not to be considered by you in determining the questions of fact involved in this case."

We think this instruction is erroneous. Of course, the arguments of counsel are not evidence, but the very purpose of an argument is to give an attorney the right

to explain and discuss the evidence to the jury from his view of the case and as it was given by the witness, or, if documentary evidence, to explain and comment upon it. If what is said in the arguments is not to be considered by the jury, then they are useless and unavailing. We think the jury could well have concluded from the foregoing language contained in the instruction that the arguments of counsel were not to be considered in determining the facts in the case.

We deem it unnecessary in view of the opinion herein to pass upon the question of the sufficiency of the evidence.

The judgment is reversed.